STATE OF NORTH CAROLINA v. JESSIE B. LEWIS

No. 697SC559

(Filed 4 February 1970)

**1. Criminal Law § 91;    Constitutional Law § 31—    continuance — time to find witnesses — denial of motion**

Defendant's motion for continuance on the ground that he needed additional time to locate material witnesses, *held* properly denied by the trial court in the exercise of its discretion and without prejudice to defendant's constitutional rights, where defendant had the names and tele-

STATE v. LEWIS

phone numbers of three possible witnesses at least five days prior to trial but made no effort to phone them, nor did he inform his attorney of their existence until the day before trial.

**2. Criminal Law § 91; Constitutional Law § 31— continuance — appeal — showing of prejudicial error**

Whether a defendant bases his appeal upon an abuse of discretion or a denial of his constitutional rights, to entitle him to a new trial because his motion to continue was not allowed, he must show both error and prejudice.

**3. Constitutional Law § 31; Criminal Law § 50— defendant's right to expert witnesses — sufficiency of request — appeal**

The denial of indigent defendant's petition that he be authorized to employ specialists "in the field of statistics" who would aid him in his defense and who would be paid by the state or county, *held* not reversible error, where (1) the petition did not specifically allege what type of specialist in statistics was needed and (2) the petition failed to show the availability of the specialists and the relevancy of their evidence.

**4. Constitutional Law § 31; Criminal Law § 50— indigent defendant's right to expert witnesses — prerequisites**

Trial court may properly refuse to permit the expenditure of State funds for the employment of expert witnesses for an indigent defendant, unless the defendant shows the reasonable probability of the availability of such evidence, together with its relevance.

**5. Criminal Law §§ 60, 80— exhibits — fingerprint cards — hearsay — custody of police department**

Fingerprint cards made in 1948 and 1955 and containing fingerprint impressions of a named individual were not hearsay and were properly admitted in evidence, where an employee of the police department testified that he was in charge of the department's fingerprint records and that the fingerprint cards had been in the custody of the department.

**6. Criminal Law § 80; Evidence § 28— public records — admissibility**

Wherever a public officer is required or authorized to keep a record of his official transactions and observations, the record so kept is admissible as evidence of the facts recorded which are within the scope of the authority or duty.

**7. Criminal Law § 138— punishment — credit for time served on prior sentence — time pending appeal**

Although a defendant is not entitled to credit for time spent in jail awaiting trial because of his inability to post bond, the defendant on the retrial of the instant case was entitled to credit for time served on the prior sentence and for time held in custody pending appeal. G.S. 15-184, G.S. 15-186, G.S. 15-186.1.

ON writ of certiorari as substitute for an appeal by defendant from *May, S.J.,* 19 May 1969 Session NASH County Superior Court.

Defendant was charged with secret assault. Upon his plea of not guilty he was tried and convicted. From judgment entered on the jury verdict, he appeals.

The assault for which defendant was tried occurred on 28 January 1955, at a time when Jessie B. Lewis was being held in the Nash County jail awaiting trial. The assault was made upon the Nash County jailer and effectuated Lewis's escape from jail. He was subsequently apprehended and returned to jail. At the August 1955 Term he entered a plea of *nolo contendere* to the charge of secret assault, and was sentenced to a term of 10 years in State Prison. He subsequently escaped and was apprehended in Philadelphia, Pennsylvania, in June 1965 and returned to North Carolina. He filed a petition for habeas corpus on 12 January 1967 and, after hearing thereon, was granted a new trial. In that proceedings he maintained that his true identity was Dr. Harold B. Richardson. Upon evidence presented, the court found as a fact that Jessie B. Lewis and Dr. Harold B. Richardson are one and the same person. Defendant was again tried at the October 1967 Session of Nash Superior Court. He was convicted and appealed. This Court affirmed the Superior Court. The Supreme Court allowed certiorari and granted a new trial. Upon a jury verdict of guilty, he was sentenced to 10 years in the State Prison. The judgment directed that he be given full credit for the time he had served on the prior sentence in this case.

*Attorney General Robert Morgan by Deputy Attorney General James F. Bullock for the State.*

*Milton P. Fields and Leon Henderson, Jr., for defendant appellant.*

MORRIS, J.

[1, 2]    Upon the call of the case for trial defendant's court-appointed counsel moved for a continuance. The court, after hearing arguments presented by defendant and the solicitor, denied the motion. The refusal of the court to continue the case is the basis for defendant's first assignment of error. Defendant contends that his identity is the primary question in the case. He has contended since the habeas corpus proceeding that he is, in fact, Dr. Harold B. Richardson, a doctor who originally is from Haiti, and not Jessie B. Lewis. It appears from the record that the session of court began on Monday, 19 May 1969. Defendant's case was called on Thursday, 22 May 1969. The defendant received a letter on 17 May

1969 containing the names and addresses of three witnesses who he felt were material to his defense. He wrote these three people on 19 May 1969 by certified mail but had not received any reply on 22 May 1969. The letter he received contained the telephone number of each of the persons. No attempt had been made to reach any one of them by telephone. Counsel for defendant stated that he was not given the information until 21 May 1969. Counsel who had been previously appointed for defendant and who had previously represented him had made diligent effort to locate witnesses whose names were given them by defendant, even to consulting with the Haitian Ambassador, but not a single witness could be located. Counsel for defendant, during a recess, attempted to call two of the three listed telephone numbers. One call resulted in no answer. On the other call, the wife of the proposed witness answered, said her husband was from Haiti, was at work and could be reached by telephone at 10:30 that night. Apparently no further attempt was made that night or later to contact this proposed witness. No affidavit was ever filed as required by G.S. 1-176. No subpœna was ever issued. When the court inquired whether defendant had a letter stating that the proposed witnesses would come, counsel replied that the letter was in French and he could not read it, but no attempt to have it translated was made. There is nothing in the record to indicate to what these witnesses would have testified had they been present. Defendant concedes that ordinarily whether a continuance is allowed is addressed to the discretion of the court. *State v. Gibson*, 229 N.C. 497, 50 S.E. 2d 520 (1948), but he contends that here there was an abuse of discretion and a denial of defendant's right of confrontation. We do not perceive any abuse of discretion, nor do we think there has been a denial of defendant's constitutional rights. It is obvious that defendant, who says he is an educated man and speaks fluently English, French and Esperanto, had the names and telephone numbers of three persons he says could help in his defense, for at least five days prior to the call of his case for trial. Yet he apparently made no effort to contact them by telephone and, from the record, did not even inform his counsel of their existence and whereabouts until the day before his case was called: this in the face of the argument that diligent effort had previously been made for a period of some four years to locate these people. It seems inconceivable that when information, sought for some four years, suddenly is unsolicitedly available, no effort is made to communicate by telephone for a period of five days, and then only at the insistence of the court, and further that no follow-up effort is made when definite information is received as to the time one witness would be available

and could be reached by telephone. "Whether a defendant bases his appeal upon an abuse of judicial discretion, or a denial of his constitutional rights, to entitle him to a new trial because his motion to continue was not allowed, he must show both error and prejudice." *State v. Moses*, 272 N.C. 509, 158 S.E. 2d 617 (1968). Defendant has shown neither. This assignment of error is overruled.

[3] Defendant next asserts error in the denial by the court of defendant's petition that he be authorized to employ experts in the field of fingerprinting and statistics and that these experts be paid by the State of North Carolina or the County of Nash.

On 31 March 1969 defendant filed a petition stating "2. That one of the crucial questions involved, or to be involved, in the trial of this action will be the question of the comparison of fingerprints of Jesse (sic) Lewis and the said Dr. Harold B. Richardson. 3. That the said Dr. Harold B. Richardson desires to employ specialists in this field and in the field of statistics, and must do so in order to properly prepare and present his defense in that the said Dr. Harold B. Richardson does not have funds with which to employ and pay the fees of these specialists, and therefore, requests the Court to enter an Order requiring the County of Nash or the State of North Carolina to pay the reasonable fees and expenses for the investigation and testimony of said specialists." The petition also requested the employment of specialists in the field of medicine and psychiatry. On 2 April 1969 Judge Hubbard entered an order directing the Department of Correction to forward to defendant's counsel a certified copy of the fingerprints taken of Jessie B. Lewis in 1955. On 4 April 1969, Judge Hubbard entered an order · as follows: "1. That the defendant or his attorneys shall give an estimate of the cost for comparing the fingerprints and, if reasonable, the Court will enter an Order requiring the County of Nash to pay the same. 2. The Court denies the motion of the defendant to employ experts to give testimony upon the admissibility of fingerprint evidence, the statistical background of fingerprint evidence and upon the question of whether or not fingerprint evidence should be rejected or received in Court." Defendant excepted only to paragraph 2 of the order. We assume that since the record is devoid of any estimate of the cost for comparing the fingerprints, defendant abandoned his request.

Defendant earnestly contends that defendant has been denied the effective aid of counsel and has been discriminated against by the State for that the State was able to obtain the services of three experts on one important issue and have them testify at the trial;

whereas, defendant was not financially able to employ experts and was not allowed to do so at the expense of the State. The witnesses testified for the State as to the comparison of the fingerprints taken in 1955 and in 1966 when defendant was apprehended and returned to custody. It is noted that defendant could also have employed experts for this purpose had he complied with the condition imposed by Judge Hubbard's order. For some reason, known best to him, he chose not to pursue this portion of his request.

We recognize, of course, that there is authority outside this jurisdiction holding that the constitutional right of an indigent to counsel includes, within reasonable limits, the right, upon request, to have one or more experts appointed to act on his behalf. We are also aware of Rule 17, Federal Rules of Criminal Procedure, giving this right to indigent defendants in Federal courts. Neither are we unaware of G.S. 7A-454, effective 1 July 1969, which provides that the court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person, the expense therefor to be paid by the State.

[3, 4] Nevertheless, we do not believe the question is properly raised in this case. The petition here does not allege specifically what type of expert is needed. A "specialist in the field of statistics" is requested. The field of statistics is quite broad and encompasses multitudinous subjects. Nor does the petition state whether such an expert is available, nor what defendant intends or would attempt to prove by this expert, or what relevancy the testimony would have to his defense. The defendant does not give the court the benefit of any information as to the approximate cost of the services of the expert witness. The tenor of defendant's cross-examination of the State's expert witnesses and the argument advanced in his brief indicates that he felt his defense would have been aided by the testimony of an expert as to the conclusiveness of fingerprint evidence and the statistical possibility that two or more fingerprints of different persons could be the same. The court, however, had before it the petition of defendant in which very scant information was given. The petition is so completely devoid of specifics that it is impossible to determine how or whether the defendant could or would be prejudiced. It appears that defendant in this case desires the State to furnish funds for a fishing expedition to try to find something which might possibly muddy the waters and furnish some possible evidence for his defense. Unless a reasonable probability of the availability of such evidence is shown, together with its relevance, and so found by the court, we do not think the State should

be required to pay the bill. The refusal of the court to grant *carte blanche* authority for the expenditure of funds for the employment of expert witnesses in this case does not constitute reversible error.

[5]    Defendant's next assignment of error is directed to the admission into evidence of State's Exhibits 1, 3 and 4 which were identified as fingerprint cards of Jessie B. Lewis.

State's Exhibit No. 1 is a fingerprint card of Jessie Bill Lewis. The fingerprints thereon were taken 14 February 1948 by J. E. Grady. Exhibit No. 3 is a set of fingerprint impressions of Jessie B. Lewis taken by Dr. J. E. Grady on 11 January 1955. Exhibit No. 4 is a photo of the print of right ring finger taken from the 1948 set and the same ring finger from a set of impressions taken by B. C. Richardson in 1966. No objection is made to the admission of the fingerprints taken in 1966.

The fingerprint records were introduced into evidence on the testimony of B. C. Richardson who testified, in substance, that he was employed by the Rocky Mount Police Department and had been for 19 years; that he was in charge of the identification division of the police department; that it was his responsibility to do the fingerprinting and keep the fingerprint records and photographs of the Rocky Mount Police Department; that the Department had the fingerprints of Jessie B. Lewis and that they had been in the custody of the Rocky Mount Police Department. He further identified each exhibit as a fingerprint card of Jessie Bill Lewis, a part of the records of the Rocky Mount Police Department. As to Exhibit No. 4, he testified that he had himself made the photographs and had blown them up for purposes of comparison.

[5, 6]    Defendant contends that the exhibits are hearsay and inadmissible. "Wherever a public officer is required or authorized to keep a record of his official transactions and observations, the record so kept is admissible as evidence of the facts recorded which are within the scope of the authority or duty." Stansbury, N.C. Evidence 2d, § 153, p. 379. With respect to this question, Stansbury further notes that "[a]dmissibility is not confined to records made and kept in a public office, but extends to reports and returns made by one officer to another" and "[i]f the original document or record itself is produced, its authenticity may be proved by the testimony of the official custodian that it is a part of the records or files of his office." Stansbury, *supra*, pp. 381, 383. Defendant's assignment of error to their admission in evidence is overruled. Their probative force was a matter for the jury.

[7]   Defendant next contends that the court erred in denying his request for credit for the time spent in jail awaiting trial and pending appeal since 1965. Our courts have held that a defendant is not entitled to credit for time spent in jail awaiting trial because of his inability to post bond. *Williams v. State,* 269 N.C. 301, 152 S.E. 2d 111 (1967); *State v. Weaver,* 264 N.C. 681, 142 S.E. 2d 633 (1965); *In re Wilson,* 3 N.C. App. 136, 164 S.E. 2d 56 (1968).

But the defendant is entitled to time served on prior sentence imposed in this case and for time spent while being held in custody on this charge pending appeals in this case. See G.S. 15-184 as amended effective 22 April 1969, and G.S. 15-186 and G.S. 15-186.1 effective 16 June 1969.

Before commitment is issued in this case a judge of the superior court assigned to hold the courts in Nash County shall hold a hearing at which the defendant and his counsel may be heard and shall make due inquiry and appropriate findings, both of fact and law, with respect to the time actually served by the defendant on a prior sentence in this case numbered 6713 in which a new trial was granted, and any other time actually spent by the defendant while being held in custody on this charge pending his several appeals in this case. The judge shall reduce his findings to writing, cause a transcript of the evidence taken at such hearing to be filed in the office of the Clerk of the Superior Court of Nash County and the defendant furnished a copy thereof, and make an appropriate order or orders based on his findings of fact and conclusions of law requiring the Director of the Department of Corrections to give the defendant credit on the 10-year prison sentence imposed herein for all the time the defendant served in prison on his plea of *nolo contendere* entered in this case in addition to credit for any other time the defendant has been detained on this charge by the authorities pending his several appeals in this case.

The record in this case clearly shows that this defendant first entered a plea of *nolo contendere.* Subsequently, he filed a petition for writ of *habeas corpus.* He then contended that he was not Jessie B. Lewis but was Dr. Harold B. Richardson. He did not seek review of the determination in that proceedings that Jessie B. Lewis and Dr. Harold B. Richardson are one and the same person but accepted a new trial granted to Jessie B. Lewis on the ground that Jessie B. Lewis had not had counsel appointed when he entered his plea of *nolo contendere.* Upon his retrial, represented by able and well-qualified counsel appointed by the court, he was convicted and appealed. This Court affirmed his conviction. The Supreme Court

·allowed certiorari and granted a new trial. The present appeal is from a conviction and sentence upon the jury verdict of guilty upon retrial. It is obvious that defendant has had his day in court. The trial from which this appeal was taken as a matter of right was free from prejudicial error.

In the trial we find no error. The cause, however, is remanded for a hearing in accordance with this opinion.

MALLARD, C.J., and HEDRICK, J., concur.