STATE OF NORTH CAROLINA v. JESSE LEWIS

No. 737SC329

(Filed 25 July 1973)

1. **Criminal Law § 138— punishment — credit for time already served**
   The constitutional guaranty against multiple punishments for the same offense requires that punishment already enacted must be fully credited in imposing a new conviction for the same offense.

2. **Criminal Law § 138— credit to breaking and entering sentence only for time served subsequent to expiration of secret assault sentence**
   Where defendant was given credit on his sentence for secret assault for time spent in jail and in a hospital, defendant was not entitled to have that time already credited to the previously imposed sentence of secret assault credited to a subsequently imposed sentence for breaking and entering; rather, defendant was entitled to credit as against his sentence for breaking and entering only for time of confinement subsequent to expiration of the secret assault sentence.

3. **Constitutional Law § 30— speedy trial — lapse of 3½ years — no denial of right**
   Though three and one-half years elapsed from the time defendant's prior conviction for breaking and entering was vacated in 1967 until he was declared incompetent to stand trial in 1970, defendant was not denied his right to a speedy trial where, during that time, he was twice placed in a hospital for mental examination and evaluation, a case for secret assault which was pending against him was called

for trial but continued for six months at defendant's request, defendant was tried and convicted of secret assault but the conviction was reversed, defendant was again tried and convicted for secret assault and again appealed; moreover, defendant did not show that he was prejudiced by the delay or that the delay was the studied choice of the prosecution.

**4. Burglary and Unlawful Breakings § 5— evidence outside confession — sufficiency**

There was sufficient evidence of the *corpus delicti* in a breaking and entering case to permit submission of defendant's alleged confession to the jury.

APPEAL by defendant from *Copeland, Special Judge,* 13 November 1972 Session Superior Court, NASH County.

Defendant was tried and convicted on three charges of forgery in cases No. 6469, 6470 and 6471 at the 31 January 1955 Session of Superior Court. These cases were consolidated for trial and judgment, and defendant was sentenced to not less than three nor more than four years in prison. Also at that session, in case No. 6472, defendant was convicted on charges of breaking and entering and larceny. Prayer for judgment was continued on the larceny charge, and defendant was sentenced to not less than seven nor more than ten years on the breaking and entering charge. This sentence was to begin at the expiration of the sentence imposed upon defendant's forgery convictions.

On 16 August 1955 defendant was sentenced to prison for two years in case No. 28014 for escape. Also defendant was convicted in case No. 6713 for secret assault with a deadly weapon with intent to kill inflicting serious bodily injury and committed on 24 August 1955 to serve a ten-year prison sentence to begin at the expiration of the escape sentence.

Subsequently defendant escaped from prison on two separate occasions and was out of custody (1) from 3 November 1955 to 19 September 1956 and (2) from 3 October 1957 to 12 July 1965. The time he was out of custody was not, of course, credited toward the completion of any of his sentences. From 12 July 1965 to the present, defendant has either been in the custody of the North Carolina Department of Correction, the Nash County Sheriff's Department, or Cherry Hospital.

Defendant completed the sentence imposed for his forgery convictions and began serving his breaking and entering sentence on 29 September 1966. On 13 February 1967 as a con-

sequence of a hearing on defendant's petition for a writ of habeas corpus, Judge Cowper vacated all of defendant's prior convictions and ordered new trials because defendant had not been afforded his right to court-appointed counsel at any of the previous trials. In the same order, Judge Cowper committed the defendant to Cherry Hospital for mental examination and evaluation.

On 12 April 1967, the medical staff of Cherry Hospital certified that defendant was competent to stand trial and after a series of continuances requested by defendant, he was finally tried and convicted on the charge of secret assault at the October 1967 Session of Nash County Superior Court. Defendant received a sentence of ten years with credit given for all time previously served on the charge. This conviction was affirmed by this Court, *State v. Lewis*, 1 N.C. App. 296, 161 S.E. 2d 497 (1968), and, by the Supreme Court, reversed and a new trial granted, 274 N.C. 438, 164 S.E. 2d 177 (1968).

At the 19 May 1969 Session of Superior Court defendant was again tried and convicted for secret assault and sentenced to ten years. This conviction was upheld but the case was remanded for a determination of the amount of credit to be given for time previously served. *State v. Lewis*, 7 N.C. App. 178, 171 S.E. 2d 793 (1970), cert. denied and purported appeal as of right dismissed, 276 N.C. 328 (1970). Defendant completed serving his sentence for secret assault on 25 October 1971.

On 1 April 1970 defendant's present counsel was appointed by Judge Peel and on 1 June 1970 defendant was sent, pursuant to court order, to Cherry Hospital for a period of 60 days' observation and mental examination.

On 8 October 1970 after a bill of indictment charging defendant with breaking and entering and larceny (case No. 6472—now 70CR4340) was read to defendant in open court, defendant's counsel made a motion that defendant not be required to plead pending a hearing on the competency of the defendant to stand trial. This motion was allowed.

After a hearing was held, Judge Cohoon declared that defendant was incompetent to stand trial and ordered that he be returned to Cherry Hospital until such time as the hospital authorities determine that he is mentally capable of standing trial.

Defendant remained at Cherry Hospital until 13 August 1972 when he was returned to Nash County upon a finding that he was competent to stand trial. At the 13 November 1972 Session of Superior Court, defendant was tried and convicted of felonious breaking and entering and nonfelonious larceny. Defendant was sentenced to not less than three nor more than five years on the breaking and entering charge and prayer for judgment was continued on the larceny charge. Judgment was entered allowing defendant credit for time spent in confinement either in Cherry Hospital or Nash County jail since 25 October 1971 awaiting trial in this case. It was also ordered that defendant was to receive credit for any other time so determined by the Prison Department that he had spent in jail or Cherry Hospital awaiting trial in this case. From this judgment defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Jones, for the State.*

*Battle, Winslow, Scott and Wiley, P.A., by Samuel S. Woodley, for defendant appellant.*

MORRIS, Judge.

Defendant contends in his first assignment of error, upon the authority of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed. 2d 656 (1969), that the sentence imposed upon his 1972 conviction for breaking and entering constitutes an unlawful and multiple punishment for the same offense as prohibited by the Fifth Amendment of the United States Constitution. Defendant's argument is basically as follows: He began serving his original sentence for breaking and entering on 29 September 1966, more than six years before his retrial in November 1972. Applying the standard gain time rate, he would have probably completed the original sentence in September of 1971 or at most in October of 1973. Therefore, the sentence of not less than three nor more than five years imposed in November 1972 would keep him in custody for a longer period than the sentence originally imposed, even with the amount of time allowed as credit by the trial court. This assignment of error is without merit.

[1] It was held in *North Carolina v. Pearce, supra,* that the constitutional guaranty against multiple punishments for the same offense requires that punishment already enacted must

be fully credited in imposing a new conviction for the same offense. Also the General Assembly of North Carolina recently passed "An Act To Provide Credit For All Time Spent In Custody," Chapter 44, 1973 Session Laws, in which the statute, G.S. 15-196.1, provides as follows:

> *"Credits allowed.*—The term of a determinate sentence or the minimum and maximum term of an indeterminate sentence shall be credited with and diminished by the total amount of time a defendant has spent, committed to or in confinement *in any State or local correctional, mental or other institution as a result of the charge that culminated in the sentence.* The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent in custody pending trial, trial de novo, appeal, retrial, or pending parole and probation revocation hearing: *Provided, however, the credit available herein shall not include any time that is credited on the term of a previously imposed sentence to which a defendant is subject."* (Emphasis supplied.)

The act repealed former G.S. 15-176.2 and 15-186.1 and was made applicable to all prisoners, including those convicted prior to its enactment who are entitled to, but who have not heretofore received all such allowable credit.

Defendant began service on the original sentence of not less than seven nor more than ten years on 29 September 1966 and actually served until 13 February 1967, some four and one-half months until his first conviction was vacated. He is clearly entitled to credit for this (which is impliedly given in the trial court's order of 16 November 1972). Also defendant was given credit for the time spent in confinement either in Cherry Hospital or the Nash County jail since 25 October 1971, the date he completed his sentence for secret assault. Yet defendant would have the trial court order that he be given credit for the time after his convictions were vacated (13 February 1967) until 25 October 1971 when he completed serving the secret assault sentence.

[2] By an order entered 8 October 1970 Judge Cohoon gave defendant credit for all the time he had spent in jail or in Cherry Hospital prior to the judgment entered upon his conviction for secret assault. Defendant finished serving his secret assault sentence on 25 October 1971 and it was from that date that

defendant was given credit as against his sentence for breaking and entering. Clearly the trial court committed no error in failing to credit time already credited to the previously imposed sentence for secret assault. G.S. 15-196.1, supra. We hold that the trial court credited defendant with all the time that was properly due him and this assignment of error is overruled.

[3] By his second assignment of error, defendant contends that he was denied his Sixth Amendment right to a speedy trial on the breaking and entering charge upon the State's failure to try him from the time his prior conviction was vacated in February of 1967 until he was committed to Cherry Hospital in October of 1970.

Principles governing the right to a speedy trial were ably set forth by Justice Sharp in *State v. Johnson,* 275 N.C. 264, 269-270, 167 S.E. 2d 274 (1969), and are as follows:

"1. The fundamental law of the State secures to every person *formally accused* of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution (made applicable to the State by the Fourteenth Amendment, *Klopfer v. North Carolina,* 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967)).

2. A convict, confined in the penitentiary for an unrelated crime, is not excepted for the constitutional guarantee of a speedy trial of any other charges pending against him.

3. Undue delay cannot be categorically defined in terms of days, months, or even years; the circumstances of each particular case determine whether a speedy trial has been afforded. Four interrelated factors bear upon the question: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant.

4. The guarantee of a speedy trial is designed to protect a defendant from the dangers inherent in a prosecution which has been negligently or arbitrarily delayed by the State; prolonged imprisonment, anxiety and public distrust engendered by untried accusations of crime, lost evidence and witnesses, and impaired memories.

5. The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfullness of the prosecution. A defendant who has himself caused the delay, or acquiesced

in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice. (Citations omitted.)"

Similarly, the U. S. Supreme Court has adopted a balancing test as enunciated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972), in which the conduct of both the prosecution and the defendant are weighed.

"A balancing test necessarily compels courts to approach speedy-trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed. 2d at 116-117.

\*    \*    \*

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed. 2d at 118.

Applying the above principles to the case *sub judice,* we are of the opinion that defendant's right to a speedy trial was not abridged.

From the time the breaking and entering judgment against defendant was vacated in February 1967 until he was adjudged incompetent to stand trial on 8 October 1970 is a period of more than three and one-half years. During that period the following took place: (1) From the date the judgments against defendant were vacated in February 1967 until 12 April 1967 defendant underwent mental examination and evaluation in Cherry Hospital. (2) from the time defendant returned from Cherry Hospital on 12 April 1967 he was in the custody of the Sheriff of Nash County and each time his case (for secret assault) was called for trial, defendant at his own request had the matter continued until October 1967. (3) Defendant was tried and convicted of secret assault at the October 1967 Session of Nash Superior Court, and, on his appeal, this conviction was subsequently reversed, 20 November 1968. (4) Defendant was

again tried and convicted for secret assault on 19 May 1969, and again appealed. This conviction was upheld on appeal but remanded for a determination of the proper credit to be given defendant for time spent in custody. (5) On 1 June 1970 defendant's case for breaking and entering was placed on the trial calendar and defendant was sent to Cherry Hospital for a 60-day period of observation and mental examination. Taking the above factors into consideration, the delay in bringing defendant to trial on the breaking and entering and larceny charges was not as inordinate as might first appear.

Moreover, any prejudice suffered by defendant as a result of the delay was minimal and we can perceive nothing that would indicate that defendant was deprived of any means of proving his innocence. Most of the key witnesses were still alive. Defendant did testify that he received the allegedly stolen property involved from one Henry Dunn in payment of a debt owed him by Dunn, yet Dunn had been dead since the 1950's and any delay from 1967-1970 would have been immaterial to this defense. Also defendant mentioned nothing about Dunn or any debt owed him when he confessed to police officers that he picked the lock to Dunn's home and took the goods in question.

We also note that no demand was made for a speedy trial until done so by defendant's court-appointed counsel on 1 June 1970. It is true that defendant's counsel in this case was not appointed until 1 April 1970, and while we realize a rigid "demand-waiver" rule was rejected by the U. S. Supreme Court in *Barker v. Wingo, supra,* we are obliged to take note of the many petitions filed in the court by defendant without benefit of counsel seeking relief as to other matters. Obviously defendant was aware of the indictment pending against him and capable during the period of making such a demand himself. Furthermore defendant has not shown that the delay in bringing him to trial was "the studied choice of the prosecution." *State v. Johnson, supra,* at 273.

A balancing of the factors established as guidelines by both the Supreme Court of North Carolina and the Supreme Court of the United States results in our determination that defendant was not deprived of his due process right to a speedy trial.

Insurance Co. v. Motor Co.

[4]   Finally, defendant contends that the trial court committed error in allowing into evidence his alleged confession. Counsel for defendant concedes that the requirements of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), do not apply in this case since the alleged confession was made prior to the date of that decision. But counsel for defendant does contend that there was insufficient corroborative evidence to establish the *corpus delicti* and thereby permit submission of his alleged confession to the jury. We do not agree. Clearly there was sufficient evidence that the home in question was illegally entered and goods wrongfully taken therefrom.

In the proceedings in the Superior Court, we find

No error.

Judges CAMPBELL and VAUGHN concur.