490 F.2d 1222
 Phillip Morris JONES, #037175, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Director, Division of Corrections,
State of Florida, Etc., Respondent-Appellee.
No. 73-2542 Summary Calendar.*
*Rule 18, 5 Cir., see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431
F.2d 409.
 United States Court of Appeals, Fifth Circuit.
 March 6, 1974, Rehearing Denied April 3, 1974.
 
 Robert C. Stone, Stanley L. Seligman, Andrew L. FrieDrich, Hollywood, Fla., for petitioner-appellant.
 Nelson E. Bailey, Asst. Atty. Gen., Frank B. Kessler, West Palm Beach, Fla., for respondent-appellee.
 Before BELL, GODBOLD and GEE, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This appeal is from the denial, without an evidentiary hearing, of the habeas petition of a Florida state prisoner under a life sentence. The petitioner was denied his right to a speedy trial as guaranteed by the sixth and fourteenth amendments to the United States Constitution. The state concedes, and the Florida state court has found, that petitioner was not promptly tried. Jones v. Florida, 255 So.2d 712 (4 DCA), cert. denied, 260 So.2d 515 (Fla. 1972). The critical issue concerns whether from that denial he suffered prejudice in the form of impairment of his defense.[1] Petitioner's position is that he was seriously prejudiced by the absence at trial of a material witness.
 
 
 2
 The state record indicates that a lone armed gunman robbed a theater on March 29, 1968, at approximately 10:50 p.m. The robbery occurred in a well-lighted room, and the two victims were the assistant manager Bennett and the cashier Linda Ruscue. Only Bennett testified at the trial, and he identified petitioner as the robber. Shortly after the robbery Bennett had examined numerous police mug photographs but made no identification. There is no evidence that he was shown petitioner's photograph on that occasion. Thereafter, in October, 1968, upon being shown another photo spread, Bennett identified a photo of petitioner as that of the robber. An arrest warrant issued based on that identification. When arrested and until trial petitioner was incarcerated on a federal charge in the State of Washington.
 
 
 3
 At the Florida trial, some 25 months after the robbery and 18 months after petitioner's arrest, cashier Ruscue was not present and had not been subpoenaed by either prosecution or defense. As to her absence, petitioner claimed:
 
 
 4
 In the case at hand, the trial was delayed over a period of eighteen months. This resulted in the actual prejudice to the Petitioner in that his ability to marshall an adequate defense was fatally prejudiced by the loss of a material witness and the inability to produce any defense witnesses.
 
 
 5
 The testimony of the eyewitness for the State clearly reflects that there was another eyewitness * * *; however, the State did not produce this second witness at the time of trial. Considering the conflict in the testimony of the State's witness (Bennett) * * * as to whether the police officer indicated that the Defendant was guilty prior to the identification by the witness, it is very possible that the Defendant was seriously prejudiced by not having access to the other eyewitness to the alleged crime. The Defendant was attempting to obtain details of the crime with which he was charged some fifteen months before the trial of this cause. Had the State given him the speedy trial to which he was entitled, it is possible that this witness could have been located in his behalf. By the time of the trial, not even the State was able to produce this witness.
 
 
 6
 The District Court, in denying the petition, held:
 
 
 7
 Now to the most important subcategory of prejudice, impairment of the defense. Petitioner attempts to show prejudice by attributing to the delay the State's failure to subpoena for the trial the second victim of the robbery, Linda Ruscue. The record is silent as to why she was not called. An assumption that he absence resulted from the delay does not weigh in petitioner's favor. Petitioner makes not even an allegation that her presence would have aided the defense. If petitioner had alleged that the victim Ruscue had previously identified someone other than petitioner as the robber, or perhaps even that she could not identify the petitioner, prejudice would appear. But, without even an allegation to that effect, there is no basis to conclude that petitioner was prejudiced by her absence. Petitioner points to no defense witnesses who were unavailable as a result of the delay, or to any witness whose memory was impaired as a result of the delay.
 
 
 8
 This was an overly technical construction of petitioner's claim. Fairly read, his pleadings alleged that the testimony of the only available witness was unreliable because tainted by the suggestive photo display, and that the best means of countering the prejudicial effect of the testimony-- production of another eyewitness-- was denied him through the state's fault. True, he did not allege that Ruscue had identified someone else or that she could not identify him. But his claim of prejudice is not directed to what Ruscue would say but to the allegedly state-caused denial of the opportunity to find out what she would say and to attempt to use the information if favorable.
 
 
 9
 We agree with the state that it had no duty to marshal the evidence for the petitioner, but that is not the duty claimed to have been breached. What petitioner says is that the state-caused delay made it impossible for him to marshal his own case.[2] We hold that in these circumstances his pleadings are sufficient to open the door to an evidentiary hearing. We do not, of course, exclude the possibility that in another situation all the pleadings, the state's as well as petitioner's, might make clear that the absent witness's testimony would have been favorable to the prosecution, immaterial, or redundant, or that the absence was not caused by the delay. In such a case no evidentiary hearing would be required. But here it is undisputed that Ruscue was one of two eyewitnesses to a serious crime. She had an excellent opportunity to observe the robber, and was a person whom the prosecution normally would be anxious to produce, yet the state's pleadings do not explain her nonappearance. In short, her knowledge was so vital and her absence so unusual as to forbid dismissal of the petition without an evidentiary hearing.
 
 
 10
 Having decided that a hearing is necessary, we address ourselves to the allocation of the burden of proof. Placing the burden may be critically important or even dispositive where speedy trial has been denied and the issue is whether the defense has been impaired. As the author of this opinion noted elsewhere:
 
 
 11
 The most substantial problem generated by the prejudice requirement involves the allocation of the burden of proof. As might be expected from the generally cautious and restrictive approach which the courts have taken towards speedy trial claims, this obligation has been imposed upon the accused, and the courts have required concrete evidence to meet it. In some cases, the accused has successfully shouldered the burden, but more often he has been unable to do so. The task is not so difficult where the accused contends that he was prejudiced through 'anxiety and concern,' or through 'undue and oppressive' incarceration prior to trial, for in such cases the dispute typically does not revolve around the presence or absence of these factors but rather around the more or less subjective judgment of whether their effect is sufficiently more grievous than the normal hardships of prosecution, thus warranting condemnation. But in cases where the accused contends that his ability to defend himself was impaired, the burden of proof may be crucial. Although the disappearance of witnesses or documentary evidence may be subject to proof, demonstrating their materiality may be more difficult and 'measur(ing) the cost of delay in terms of the dimmed memories of the parties and available witnesses' may be almost impossible. In some instances, however, the rigors of this requirement have been mitigated. Moved by such factors as intentionally dilatory prosecution tactics or extremely protracted delays, the courts have either required the prosecution to prove the absence of prejudice or, in what amounts to the same thing, have presumed the existence of prejudice. In the case of long delays the presumption of prejudice is rationally grounded upon judicial recognition that, at least with regard to testimonial evidence, the events of years past are not as well remembered as those of yesterday.
 
 
 12
 Godbold, Speedy Trial-- Major Surgery for a National Ill, 24 Ala.L.Rev. 265, 283-84 (1972). We held that in the present case the state must come forward at an evidentiary hearing with the facts available to it concerning the circumstances of Ruscue's nonappearance at trial.[3] It is not only fair but common sense as well that the state should be required to reveal to the court what it knows. In the performance of its investigatorial and prosecutorial functions it is more likely to have accumulated information concerning Ruscue's knowledge of the crime and her availability as a witness at trial. The petitioner, incarcerated 2,000 or more miles away (and repeatedly demanding trial), is not nearly so likely to possess relevant information. But we hold that to the extent that he does have information, he too must be required to show his hand at an evidentiary hearing.
 
 
 13
 In a case in which the delay in trial was much longer this Circuit has suggested in dictum that a presumption of prejudice may arise. See Hoskins v. Wainwright, 485 F.2d 1186, 1193 n. 9 (CA5 1973). There may be circumstances under which the Hoskins concept should be applied to allegations of impairment caused by missing witnesses. But we think the concept is not applicable where, as here, the defendant's claim is, pure and simple, that an important witness was absent at the delayed trial, the absence is unexplained, the content of the witness's testimony is unknown, and there exists a possibility, but only a possibility, that the testimony might have been favorable to the accused.[4]
 
 
 14
 There is no merit to appellant's second point, which is that he was denied counsel of his choice at his merits trial. On that issue the decision of the District Court was correct.
 
 
 15
 Affirmed in part, reversed in part and remanded for an evidentiary hearing.
 
 
 
 [1]
 The District Judge, with care and precision, examined the factors laid down by Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and concluded that the delay was attributable to the state. He examined the elements of prejudice and eliminated all except possible impairment of the defense
 
 
 [2]
 In United States v. Burnett, 476 F.2d 726 (CA5 1973), defendant, in a direct appeal from a conviction for draft evasion, contended that during a 30 months delay in trial the government destroyed records that 'could have been relevant' in his defense. We reversed and remanded on other grounds but stated:
 'We are unable to determine from the record on this appeal what degree of prejudice, if any, Burnett may have suffered from the destruction and intimate no ruling on the merits of this point. However, if Burnett chooses to pursue this issue on remand, the district court is directed to examine that contention, and determine just what records were destroyed and whether their destruction prejudiced Burnett in his defense. If prejudice is found the teaching of Barker (407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101) and Dyson (5th Cir. 469 F.2d 735) would mandate dismissal.'
 Id. at 729-730.
 
 
 [3]
 Among the questions to be explored are the following: Was the witness subpoenaed? If not, why not? Were her whereabouts unknown? If so, what efforts did the prosecution make to find her? Had she given statements to the prosecution that would tend to show whether she could or could not identify the robber? Cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)
 
 
 [4]
 Placing the burden of persuasion upon the prosecution in all cases in which the prejudice allegedly caused by trial delay takes the form of missing witnesses, would erode the requirement that the defense have been impaired and would force the state to produce at trial unnecessary witnesses