Dr. Carlos Bustamonte RICON, alias
Harold B. Richardson alias Jesse
Lewis, Appellant,

v.

Warden, Sam P. GARRISON, Central
Prison, Raleigh, N. C. and State of
North Carolina, Appellees.

No. 74–1426.

United States Court of Appeals,
Fourth Circuit.

Argued March 7, 1975.

Decided May 28, 1975.

Certiorari Denied Oct. 14, 1975.
See 96 S.Ct. 195.

**630**

Patricia W. Weinberg, Arlington, Va. (court-appointed) for appellant.

Richard N. League, Asst. Atty. Gen. (Rufus L. Edmisten, Atty. Gen. of North Carolina, on brief), for appellees.

Before WINTER, CRAVEN and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The petitioner, a North Carolina prisoner convicted of the crime of breaking and entering, sought *habeas* relief, claiming a violation of his right to a speedy trial under the Sixth Amendment. Exhaustion of state remedies was conceded. On the state record, the District Court denied relief and this appeal followed. We affirm.

The prosecution of the petitioner actually began in 1955. In February of that year, he was tried and convicted on three charges of forgery and on a charge of breaking and entering. He received a sentence of not less than 3 nor more than 4 years on the forgery convictions and of not less than 7 nor more than 10 years on the breaking and entering conviction, to be served consecutively. In August of that same year, he was convicted and sentenced to prison for two years on an escape charge and for 10 years on a charge of secret assault with a deadly weapon with intent to kill, the sentences to be served consecutively. Subsequently, he escaped from prison on two occasions and was out of custody (1) from November, 1955, to September, 1956, and (2) from October, 1957 to July, 1965.[1] While a fugitive, he was arrested and convicted in 1963 in the State of Pennsylvania of illegally practicing medicine under the name of Harold B. Richardson. He received a sentence of 2 years on this offense. As a result of this imprisonment, he was identified as a fugitive from North Carolina and at the completion of his imprisonment in Pennsylvania, he was returned to North Carolina for the completion of his sentences in that State where he was known as Jesse B. Lewis. Immediately on his return to North Carolina, he began a series of *pro se* proceedings in both state and federal courts seeking release, claiming that he had "never visited" North Carolina until forcibly and illegally returned through extradition proceedings, had never committed "any crime" in that State and was accordingly imprisoned improperly and unconstitutionally in that State. He went further, asserting that he was a doctor, "a refugee from Haiti" involved "in service with the Central Intelligence Service." It was established, however, by means of fingerprint records that the petitioner was "known by numerous other names and aliases" than Richardson and Lewis but that he was the same person, whether using the name Richardson or Lewis. He filed at least four proceedings in the District Court setting up this claim of misidentification and prosecuted three appeals to this Court from the denial of relief on that ground. These proceedings continued as late as May, 1970.

He completed service of his sentence under the forgery conviction in September, 1966 and began service of his sentence on the breaking and entering charge at that time. In February, 1967, he filed in state court another *habeas*

---

1. This historical background is set forth in State v. Lewis (1973) 18 N.C.App. 681, 198 S.E.2d 57.

proceeding, claiming again that he was Dr. Harold B. Richardson, not the defendant Lewis and asserting somewhat inconsistently that Lewis had not been represented by counsel at his convictions in 1955. A hearing was accorded the petitioner on that claim in the state court and it was determined again that the petitioner was the defendant Lewis. But, in the course of that *habeas* hearing, it developed that the petitioner had not been represented by counsel at his 1955 convictions and the state court invalidated all of the 1955 convictions, with leave to the State to retry. An order to this effect was entered in February, 1967.[2] At the same time, the Court on its own motion ordered the petitioner committed to a state mental hospital for determination of his competency to stand trial. It was not until April 12, 1967, that the petitioner was determined to be competent to stand trial.

After the petitioner had been adjudged competent to stand trial, the State apparently chose to proceed first on the charge of secret assault and, at the instance of appointed counsel, trial on that charge was delayed until October, 1967, when he was tried and convicted. From this conviction, he appealed and was granted a new trial in November, 1968.[3] Retried on this charge in May, 1969, he was again convicted and this conviction was affirmed in 1970.[4] On April 1, 1970, counsel was appointed to represent the petitioner on the charge of breaking and entering. At the same time the petitioner was prosecuting *pro se* in the District Court another action in which he raised the issue of misidentification. Counsel, appointed to represent him on the breaking and entering charge, raised the issue of speedy trial as well as the competency of the petitioner to stand trial on June 1, 1970. As a result of this action, the court concluded

first to order a mental examination of the petitioner. In October, 1970, the case was called for trial, but, upon renewal of the plea of incompetency and after a hearing on the petitioner's competency to stand trial, the petitioner was found incompetent and was ordered returned to the State Mental Hospital. He remained at the Hospital until August, 1972, when he was finally found competent to stand trial. To permit counsel for the petitioner to be present and submit motions, trial was delayed until November, 1972, when he was tried, convicted, and sentenced to not less than 3 nor more than 5 years' imprisonment, with credit for prior confinement. It is that conviction which the petitioner assails in this *habeas* proceeding on "speedy trial" grounds.

Barker v. Wingo (1972) 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 is the authoritative decision on the construction of the right to a speedy trial as guaranteed by the Sixth Amendment. It declared that the right is a "vague concept" in the area of constitutional rights, not susceptible of rigid or precise definition. The right, it declares, cannot be "quantified" and is not to be applied mechanically in terms of any fixed period of time, like a statute of limitations, for, as it has elsewhere been stated, "[T]he mere passage of time * * * [will] not, per se, establish an unconstitutional denial of a right to a speedy trial."[5] Its application, according to *Barker*, demands rather an *ad hoc* approach, representing "a functional analysis of the right in the particular context of the case." The analysis thus required is, we are advised, to consist of a sensitive balancing of the conduct of both the prosecution and the defense in the setting of "the peculiar circumstances of the case." And the Court identified the factors to be considered in this balancing test as

---

2. This part of the history appears in State v. Lewis (1968) 274 N.C. 438, 164 S.E.2d 177, 178–9.

3. 274 N.C. 438, 164 S.E.2d 177.

4. 7 N.C.App. 178, 171 S.E.2d 793.

5. United States v. Spoonhunter (10th Cir. 1973) 476 F.2d 1050, 1057. To the same effect: United States v. Cary (1972) 152 U.S. App.D.C. 321, 470 F.2d 469, 472.

"[L]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant," though it cautioned that no one of the factors was to be regarded as "either a necessary or sufficient condition [in itself] to the finding of a deprivation of the right of speedy trial" since "they are related factors and must be considered together with such other circumstances as may be relevant."

■ In applying this "balancing test," as mandated by *Barker*, the first issue is necessarily the extent of delay. The parties differ substantially in their calculations of the delay in this case. The petitioner insists the starting point for determining the length of the delay is the date of petitioner's original indictment and trial in 1955. It is the position of the State, on the other hand, that, in calculating the delay, we should start with the date in 1967 when petitioner's original conviction was invalidated and the petitioner was found competent to stand trial. We are persuaded that the latter view is the correct one. Until March 18, 1963,[6] it was generally assumed in most states to be unnecessary to appoint counsel in any criminal case other than those involving a capital offense. Accordingly, when the defendant was originally tried in 1955 it was not considered incumbent on the court to appoint counsel for him. Prior to *Gideon* the State had no reason to assume that the failure to appoint counsel in a noncapital case would invalidate a conviction; and, after *Gideon* it is to demand too much of the state that it should have reviewed all convictions prior to *Gideon* to ascertain whether the defendant in every case, such as the petitioner, either was afforded or validly waived counsel. Until 1967 the State had not been put on

notice that the petitioner was without counsel when convicted in 1955. Under the circumstances, the State should not be charged with the delay between 1955 and 1967. This is particularly so in this case, since during a substantial period of this delay, the petitioner was a fugitive, having escaped from custody.

■ The State, also, contends that the periods when the petitioner was either under observation to determine his competency to defend himself or was under treatment for mental disability should not be considered in calculating the length of delay. Both the State Court, in its decision on the petitioner's post-conviction proceedings, and the District Court, in the *habeas* proceeding there, concurred in this view. We are in agreement. As one Court has put it, where the delay results from a concern by the trial court over the mental competency of the defendant to stand trial, "the courts have been exceedingly reluctant to find constitutional infirmity even in very long delays."[7] Indeed, if the trial court did not exercise a zealous concern in safeguarding a possibly incompetent defendant in his rights, it would properly be subject to censure and could render by its want of concern the conviction, if secured, open to attack. Rather than being penalized for seeking assurance of the mental competency of the petitioner before ordering him to trial, the State should be commended.

■ Measured under the principles just stated, the delay in this case was approximately 36 months. That is unquestionably substantial delay. It is not, however, as great as the delay in *Barker* itself, where the delay was in excess of five years, or in many other cases where the courts have found no infringement of the right to a speedy trial.[8] It is,

---

6. Gideon v. Wainwright (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

7. United States v. Canty (1972) 152 U.S.App. D.C. 103, 469 F.2d 114, 118 (quoting from Blunt v. United States (1968), 131 U.S.App. D.C. 306, 404 F.2d 1283, 1287.) To the same effect, see United States v. Lynch (D.C.Cir. 1974) 499 F.2d 1011, 1018, n. 6; United States v. Heinlein (1973) 160 U.S.App.D.C. 157, 490

F.2d 725, 729, n. 4; United States ex rel. Little v. Twomey (7th Cir. 1973) 477 F.2d 767, 770, cert. denied 414 U.S. 846, 94 S.Ct. 112, 38 L.Ed.2d 94.

8. *See* United States v. Perez (5th Cir. 1974) 489 F.2d 51 (36 months), cert. denied 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664; United States v. Drummond (5th Cir. 1974) 488 F.2d 972 (39 months); United States v. Churchill

though, a sufficiently "unusual" delay to act as a "triggering mechanism" to require inquiry into the other factors that enter into the balancing test mandated by *Barker*,[9] but it still "is only one of several factors to be weighed and balanced in determining whether the right to a speedy trial has been denied."[10]

■ The second factor, which *Barker* orders considered in this connection, is the reason for the delay. The record establishes that there was no attempt by the State to bring the petitioner to trial on the charge of breaking and entering between April 12, 1967 and April 1, 1970, when counsel was first appointed for the petitioner in this case.[11] The petitioner makes no claim that the State had delayed trial in order to hamper the defense or to gain an advantage, and the record does not suggest that, in the language of the North Carolina Court, the

delay was "the studied choice of the prosecution."[12] The record is, however, silent on the reason for this delay. It may have been that, because the petitioner was already serving another sentence, the State chose to give trial priority to defendants who had not been previously convicted and were not currently serving valid sentences. While such a reason has been declared not "irrational",[13] the mere fact that one is already under sentence as a result of another charge is not a complete justification for delay in his trial on other pending charges.[14] In the absence of any explanation by the State for its sloth, the conclusion that simple neglect or perhaps an overcrowded docket was the reason for the delay in this case is plausible. Such a delay, though more "neutral" than intentional delays, is still viewed with disfavor but is not heavily weighed in the balancing test.[15]

(1st Cir. 1973) 483 F.2d 268 (26 months); United States v. Fasanaro (2d Cir. 1973) 471 F.2d 717 (4 years), vacated and remanded for further consideration in light of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; Fasanaro v. United States, 408 U.S. 916, 92 S.Ct. 2505, 33 L.Ed.2d 329; United States v. Rosenstein (2d Cir. 1973) 474 F.2d 705 (34 months); United States v. Reynolds (6th Cir. 1973) 489 F.2d 4 (22 months), cert. denied 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766; United States v. Saglimbene (2d Cir. 1972) 471 F.2d 16 (6 years), cert. denied 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686; United States v. DeLeo (1st Cir. 1970) 422 F.2d 487 (29 months), cert. denied 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648.

*See, also*, United States v. Alo (2d Cir. 1971) 439 F.2d 751, 756, where the defendant was secretly indicted, the Government failed to proceed because of desire to conceal improper surveillance, and defendant was finally re-indicted three years later. The Court dismissed the claim of violation of the right to a speedy trial primarily because there was no showing of "credible *possibility* of prejudice" (emphasis in opinion). *Certiorari* was denied in 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89, reh. denied 404 U.S. 961, 92 S.Ct. 307, 30 L.Ed.2d 282, with a dissent in 414 U.S. 919, 94 S.Ct. 215, 38 L.Ed.2d 155.

**9.** *See Barker*, 407 U.S. at p. 530, 92 S.Ct. at p. 2192:

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial,

there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."

**10.** United States v. Churchill, *supra*, 483 F.2d at 273.

**11.** At the October 1967 Session of Superior Court of Nash County, the Presiding Judge found "That since the defendant returned from Cherry Hospital he has been in custody of the Sheriff of Nash County and that at each term of court for the trial of criminal cases since his return to Nash County, the State has been ready for the trial and disposition of this case, and that each and every time the case has been called, the defendant at his own request has had same continued until this date (October 1967)."

**12.** State v. Lewis (1973) 18 N.C.App. 681, 198 S.E.2d 57, 62.

**13.** In United States v. Canty, *supra*, 469 F.2d at p. 119, the Court described this choice of the prosecution as "not entirely irrational." *Cf. also*, Gerberding v. United States (8th Cir. 1973) 471 F.2d 55, 61.

**14.** Jordan v. Beto (5th Cir. 1973) 471 F.2d 779, 781.

**15.** *See* United States v. Cabral (1st Cir. 1973) 475 F.2d 715, 718; United States v. Toy (1973), 157 U.S.App.D.C. 152, 482 F.2d 741, 743. In the latter case, the Court said:

■ It is conceded that until June, 1970, the petitioner made no demand for trial. To some extent this failure can be excused because it was not until April 1, 1970 that counsel was appointed for the petitioner and such counsel promptly raised the claim on June 1, 1970.[16] The State Court observed in this connection, however, that it was "obliged to take note of the many petitions filed in the court by defendant without benefit of counsel seeking relief as to other matters."[17] And the record in this Court and in the District Court shows that the petitioner was persistently invoking *pro se* the aid of the Court in challenging his convictions. Despite all this, we are not, though, inclined to hold against him his failure earlier to assert his claim. At best, it would be largely a "neutral" factor in the application of the balancing test, just as the State's neglect in pressing the prosecution might be regarded as a "neutral" factor.

■ This brings us to the question of prejudice, which, while not an essential to the establishment of a violation of the right,[18] is a prime issue[19] and a "critical factor."[20] The burden of establishing prejudice rests on the petitioner.[21] In this case, the petitioner asserts but two grounds for a finding of prejudice: 1. The death of a witness; and 2. The loss of the opportunity for a concurrent sentence.[22] Neither ground seems to have any merit. The witness, whose death represented an alleged prejudice

to the petitioner in the presentation of his defense, died in the 50's, almost a decade before the petitioner asserted his claim that his prior conviction was invalid and before he was granted at his instance a retrial. Nor can it be argued that petitioner suffered any prejudice by the loss of an opportunity for a concurrent sentence. The petitioner was convicted at least seven times in connection with his 1955 offenses and at no time was he given a concurrent sentence; in every instance, the Court imposed consecutive sentences. We cannot hold that, in the face of this record, there was any possibility of a concurrent sentence for the petitioner. We agree with both the State Court and the District Court that, to use the language of the Court in United States v. Alo, *supra,* petitioner "failed not only in demonstrating actual prejudice in any respect, but also in establishing the credible *possibility* of prejudice."[23]

■ In balancing all the factors discussed, which *Barker* mandated for consideration, we find no error in the result reached by both the State Court and the District Court that there was no infringement of petitioner's right to a speedy trial in this case. We must express, however, serious concern over the delay on the part of the State in seeking a retrial in this case. In situations where the State has been granted the right to retry following the allowance of *habeas* relief, it should be particularly

"* * * While the Government agrees that the delay was most unfortunate, it denies that the delay was intentional to gain an advantage, and assigns institutional reasons as the cause. A delay due to 'negligence or overcrowded courts,' 407 U.S. at 531, 92 S.Ct. 2182, is not necessarily fatal to a valid prosecution, though it is a factor to be considered."

16. *See* United States v. Dyson (5th Cir. 1972) 469 F.2d 735, 740:

"* * * While it is true that Dyson never demanded trial it is not clear that he was aware of his right to do so since counsel was not appointed to represent him until March 30, 1972, just four days before trial."

17. 198 S.E.2d at 62.

18. *See* Moore v. Arizona (1973) 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183, but *cf.,* United States v. Alo (1973) 414 U.S. 919, 94 S.Ct. 215, 38 L.Ed.2d 155.

19. United States v. Geller (9th Cir. 1973) 481 F.2d 275, 276.

20. United States v. Reynolds (6th Cir. 1973) 489 F.2d 4, 7, cert. denied 416 U.S. 988, 94 S.Ct. 2395, 40 L.Ed.2d 766.

21. Jones v. Wainwright (5th Cir. 1974) 490 F.2d 1222, 1225; United States v. Morse (1st Cir. 1974) 491 F.2d 149, 157; Godbold, Speedy Trial—Major Surgery for a National Ill, 24 Ala. L.Rev. 265, 283–4 (1972).

22. *Cf.,* Smith v. Hooey (1969) 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607.

23. 439 F.2d at p. 756 (Italics in text).

solicitous of the defendant's right to a speedy trial. We would not like to be understood as condoning any unusual delay in such cases. Were it not for our conclusion that there was no real prejudice, it is possible the result in this case would have been different.

Affirmed.

CRAVEN, Circuit Judge (concurring):

I concur in the result.

I share Judge WINTER's viewpoint that a prosecutor may not constitutionally delay a trial for the purpose of pyramiding punishment, but whether that was the reason for the delay was not factually explored below, and I am unwilling to draw the inference from the speculation of an assistant attorney general who was not the prosecutor.

WINTER, Circuit Judge (dissenting):

I am in complete agreement with the majority's admonition that "[i]n situations where the State has been granted the right to retry following the allowance of *habeas* relief, it should be particularly solicitous of the defendant's right to a speedy trial." But, I would conclude that on this record and in accordance with this principle, application of the balancing test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), compels defendant's immediate release.

The record discloses no valid reason for the state's delay in retrying Ricon on the charge of breaking and entering after he had been adjudged competent to stand trial in April, 1967. During oral argument, however, counsel for the state informed us that he inferred that the trial on the charge of breaking and entering had been delayed until after the trial and conviction for secret assault because the prosecutor had an objective of total imprisonment which he thought Ricon should receive, and Ricon would not have been prosecuted for breaking and entering had his punishment for secret assault fulfilled that objective.* I accept the inference drawn by one having

intimate knowledge of the motives and practices of North Carolina prosecutors, but to me the reason inferred was an impermissible one to have delayed the trial. Sentencing is a function of the judiciary, not the prosecutor. Moreover, delay by the prosecutor for the reason of fulfilling the prosecutor's desired punishment intensifies the anxiety and uncertainty that having an indictment pending for so many years inflicts upon an accused. See Smith v. Hooey, 393 U.S. 374, 379, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969).

I would find bad faith on the part of the state; and when I include bad faith in the balancing test of *Barker*, the scale is tipped in favor of Ricon notwithstanding his uncertain showing of actual prejudice.

---

* We were also told that Ricon was scheduled to be released unconditionally on May 7, 1975. If

that has occurred, I think that this appeal has become moot.