**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Leroy WOODS,
Defendant-Appellant.**

**No. 79-5242.**

United States Court of Appeals,
Sixth Circuit.

Argued April 3, 1980.

Decided May 27, 1980.

Kurt A. Philipps, Covington, Ky. (Court-appointed), for defendant-appellant.

Patrick H. Molloy, U. S. Atty., C. Cleveland Gambill, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee.

Before LIVELY and BROWN, Circuit Judges, and PECK, Senior Circuit Judge.

BAILEY BROWN, Circuit Judge.

Appellant Charles Leroy Woods, was indicted in the Eastern District of Kentucky on one count of conspiracy and seven substantive counts of transporting stolen motor vehicles in interstate commerce. Prior to trial, Woods moved on three occasions to dismiss the indictment for the government's failure to comply with the Interstate Agreement on Detainers Act, 18 U.S.C.App. The district court denied the motions, holding that the lodging of a detainer against Woods by the United States Marshal for the Western District of Kentucky did not trigger the Act's application as to the prosecution of the instant, unrelated charges in the Eastern District of Kentucky. We agree with the district court's interpretation of the Act and therefore affirm.

Woods has been incarcerated as a state prisoner in the Kentucky State Reformatory since March 8, 1978. On March 9, 1978 a federal detainer was lodged there against Woods by the Marshal for the *Western* District of Kentucky. On November 16, 1978, Woods was indicted, as stated, for interstate transportation of stolen vehicles in the *Eastern* District of Kentucky. That same day, a writ of habeas corpus *ad prosequendum* was issued to produce Woods in the Eastern District by December 13, 1978. On that day he was arraigned. He was then returned to the Kentucky State Reformatory on December 15, 1978, without being tried in the Eastern District. Three more writs of habeas corpus *ad prosequendum* were used to transfer Woods between the state reformatory and the Eastern District so that he could stand trial. The trial was continued on two occasions, once on the motion of a co-defendant and once on the district court's own motion. At no time was a detainer lodged against Woods by any official in the Eastern District of Kentucky.

Trial began on June 12, 1979 and on June 15, 1979 a jury returned a guilty verdict against Woods on all eight counts of the indictment.

## THE DETAINER

Woods contends, as stated, that the district court erred in not granting his motions to dismiss the indictment, the motions being grounded on the government's alleged failure to comply with the Interstate Agreement on Detainers Act, 18 U.S.C.App. Specifically, Woods argues that his trial after his return to state custody from the Eastern District of Kentucky violated the Act, because a detainer had been lodged against him by the Marshal for the Western District of Kentucky. Therefore, the question for our decision is whether a detainer lodged by one federal judicial district is sufficient to trigger the Act's operation with respect to a prosecution in another federal judicial district, which obtains the prisoner's presence through a writ of habeas corpus *ad prosequendum* to face unrelated charges in that district. The issue is one of first impression in the circuits.[1]

Woods argues in essence that all of the individual federal districts are to be treated, for present purposes, as one federal jurisdiction. We believe that the wording of the statute demonstrates exactly the opposite intent of Congress.

Article IV(a) of the Act provides:

The *appropriate officer of the jurisdiction* in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner *against whom* he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof  .    . .

(emphasis added).

As is stated in *United States v. Mauro*, 436 U.S. 340 (1978) at 351, 98 S.Ct. 1834 at 1842, 56 L.Ed.2d 329, "Article IV provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges." In the instant case, the "appro-

priate officer" of the indicting jurisdiction, even under Woods' theory of a unitary "federal jurisdiction," is the United States Attorney for the Eastern District of Kentucky, who filed no detainer against Woods. The United States Attorney's function and authority are limited to his district. 28 U.S.C. § 547. As the district court noted, "unless the United States Attorney for the Eastern District of Kentucky, or someone authorized to act in his behalf, has caused the detainer to be filed here, he is not this 'appropriate officer' contemplated under the Agreement." *United States v. Woods*, 465 F.Supp. 89, p. 91 (E.D.Ky.1979).

Other language in the Act, though not directly applicable, also supports this conclusion. Article III(a) provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any *untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner*, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.

(emphasis added). Article V(d) states:

The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution *on the charge or charges contained in one or more untried indictments, informations, or complaints which form the basis of the detainer or detainers* or for prosecution on any other charge or charges arising out of the same transaction.

---

1. The Eighth Circuit has held that the Act does not apply to prisoner transfers from one federal district to another, because the United States is "one jurisdiction under the Agreement." *United States v. Krohn*, 558 F.2d 390, 392 (8th Cir.), *cert. denied*, 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977). The specific issue in that case is of course different from the one presented in the instant case. In *Krohn*, the court was simply stating the obvious, which is that in entering into the Agreement, the United States had not agreed with itself.

(emphasis added). We believe that this language shows that Congress had no intention of extending the Act to situations such as presented in the instant case. The language of the Act, however, is not our only basis for this conclusion.

The purpose of the Interstate Agreement on Detainers Act is to encourage the "expeditious and orderly disposition" of untried indictments, informations and complaints against persons already incarcerated in other jurisdictions. 18 U.S.C.App., § 2 Art. I; *Stroble v. Anderson*, 587 F.2d 830 (6th Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). This in turn insures that rehabilitation programs can proceed unhindered and that witnesses are available so that the defendant-prisoner can present a defense. HR No. 91–1018, p. 3 (1970); S.Rep. No. 91–1356, p. 3 (1970) U.S.Code Cong. & Admin.News 1970, p. 4864. Application of the Act to this situation would have little, if any, effect in furthering these congressional policies embodied in the Act with respect to charges pending in the federal judicial districts which had caused detainers to be filed. As the government argues, the United States Attorney for the Eastern District of Kentucky could do nothing to expedite the disposition of the charges underlying the detainer filed by the Western District of Kentucky. Furthermore, he did nothing to prolong the pendency of that detainer. The only action taken by the United States Attorney for the Eastern District of Kentucky was to seek a writ of habeas corpus *ad prosequendum* to try Woods on charges unrelated to those that formed the basis of the Western District's detainer. Clearly, since a writ of habeas corpus *ad prosequendum* is not equivalent to a detainer under the Act

had no detainer been filed in the Western District, the prosecutor's actions could not even arguably be challenged under the Act. *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *Ridgeway v. United States*, 558 F.2d 357 (6th Cir. 1977), *cert. denied*, 436 U.S. 946, 98 S.Ct. 2850, 56 L.Ed.2d 788 (1978).[2] We therefore hold that the lodging of the detainer by the Western District of Kentucky did not trigger the Act's operation as to the unrelated charges in the Eastern District of Kentucky.[3]

We have carefully considered appellant's other allegations of error and find them to be without merit.

The judgment of the district court is affirmed.

---

**2.** We recognize that in *Mauro*, at 361–362, 98 S.Ct. at 1848, the Court said: "Once the Federal Government lodges a detainer against a prisoner with state prison officials, the Agreement by its express terms becomes applicable and the United States must comply with its provisions." This statement, however, as applied to the instant case, is dicta. There the question was whether, after the prosecutor in the Southern District of New York had filed a detainer with respect to a state prisoner in Massachusetts and then obtained custody by a writ of

habeas corpus *ad prosequendum*, the writ constituted a "written request for temporary custody" within the meaning of the Act. The Court held that it did.

**3.** Because we hold that the detainer did not affect the charges pending in the Eastern District, we have no need to reach Woods' other contention that the Act was violated because he was not brought to trial within the 120 days required by Article IV(c) of the Act.