**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William H. STONER,**
**Defendant-Appellant.**

**No. 85–1300.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 18, 1986.

Decided June 18, 1986.

As Amended Sept. 10, 1986.

---

Kevin McMunigal, San Francisco, Cal., for plaintiff-appellee.

Geoffrey A. Hansen, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellant.

Before KENNEDY, REINHARDT, and BRUNETTI, Circuit Judges.

KENNEDY, Circuit Judge:

William Stoner appeals his conviction on one count of unarmed bank robbery, 18 U.S.C. § 2113(a), pursuant to a conditional guilty plea. He argues the district court's denial of his motion for dismissal of the indictment was in violation of the Interstate Agreement on Detainers Act and the Speedy Trial Act. We conclude the district court did not err in denying the motion, and we affirm appellant's conviction.

The bank robbery in question took place on July 27, 1983 in San Francisco, California. On August 23, 1983, appellant was arrested by federal agents in Washington, D.C., on charges arising from a bank robbery committed in the District of Columbia. Investigation determined that the two crimes were committed by the same person. On November 22, 1983, the United States Attorney for the Northern District of California filed a complaint charging appellant with the San Francisco bank robbery. On the basis of the complaint, a warrant was issued for appellant's arrest, and a detainer was lodged against appellant, who at the time was in the custody of federal authorities in the District of Columbia. Appellant was tried and convicted on

the District of Columbia bank robbery charge, and began serving his sentence for that crime in September 1984 at a federal correctional institution in Indiana. On October 3, 1984, after being notified that a detainer had been lodged against him at the correctional facility, appellant formally demanded trial on the outstanding charge. On March 18, 1985, the government dismissed its complaint and lifted the detainer.

On May 7, 1985, appellant was indicted for the San Francisco bank robbery in the Northern District of California. On May 16, 1985, the United States Attorney for the Northern District of California obtained a writ of habeas corpus *ad prosequendum* ordering authorities at the correctional institution to make appellant available for trial. Appellant's presence was secured pursuant to the writ, and appellant was arraigned in the Northern District of California on June 18, 1985. Appellant moved to dismiss the indictment, on the ground that the government's delay in indicting him and obtaining his presence for trial violated provisions of the Interstate Agreement on Detainers Act, Pub.L. No. 91–538, 84 Stat. 1397 (1970), *reprinted in* 18 U.S.C. app. at 545 (1982), and the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. The district court denied the motion on July 23, 1985, and appellant entered a conditional guilty plea pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. On appeal appellant challenges the district court's denial of his motion to dismiss the indictment.

Appellant first argues that because he was not brought to trial within one hundred and eighty (180) days after he responded to the government's detainer and demanded trial, dismissal of the charges against him was required under the Interstate Agreement on Detainers Act (IADA). In the IADA the United States became a signatory party to the Interstate Agreement on Detainers (IAD). The IAD is a compact among forty-eight states and the United States, the purpose of which is to effect the speedy disposition of outstanding criminal charges against prisoners incarcerated in other jurisdictions. *Carchman v. Nash*, —— U.S. ——, 105 S.Ct. 3401, 3403,

87 L.Ed.2d 516 (1985); IADA, § 2, art. I. Under Article III of the IAD, once a member jurisdiction files a detainer against a prisoner in another member jurisdiction and the prisoner responds and requests disposition of the charges outstanding against him, the jurisdiction that filed the detainer must bring the prisoner to trial within 180 days, absent good cause shown, or the charges must be dismissed. *Carchman*, 105 S.Ct. at 3403–04; IADA, § 2, art. III(a), (d). We need not address the question whether there is a substantive violation of the IADA under the facts of this case, because we find meritless appellant's threshold contention that the IADA applies to a detainer lodged by the federal government against a federal prisoner.

■ The IAD by its terms is an agreement among "contracting States." IADA, § 2. The right under Article III to be tried within 180 days is triggered only when a prisoner in "a party State" becomes subject to a detainer lodged by "[an]other party State." IADA, § 2, art. III(a). The statutory term "State" is defined to mean a state of the United States; the United States; the District of Columbia; Puerto Rico; or a territory of the United States. IADA, § 2, art. II(a). Though appellant was a prisoner and was subject to a detainer, the party State that filed the detainer against him is the same party State in whose jurisdiction he was incarcerated, namely the United States. *United States v. Krohn*, 558 F.2d 390, 392 (8th Cir.) (United States is one "State" under IADA), *cert. denied*, 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977); *United States v. Cappucci*, 342 F.Supp. 790, 793 (E.D.Pa.1972) (same). Thus, Article III, which refers to prisoners in one member State subject to detainers issued by another member State, is inapposite.

Appellant relies on *United States v. Bryant*, 612 F.2d 806 (4th Cir.1979), *cert. denied*, 446 U.S. 920, 100 S.Ct. 1855, 64 L.Ed.2d 274 (1980), for the proposition that the United States is not necessarily one "State" under the IADA and each federal

judicial district should be construed to be a separate "State." Appellant maintains that because he was incarcerated in one federal district, the Southern District of Indiana, and he was subject to a detainer in another district, the Northern District of California, two "States" are implicated and he is entitled to the protections afforded by the IADA. We find that *Bryant* is distinguishable and militates against rather than in favor of appellant's argument.

In *Bryant* a state prisoner in Maryland was transferred to the Western District of North Carolina for trial on outstanding federal charges. *Bryant,* 612 F.2d at 808. He was convicted and returned to the state prison. *Id.* A short time later he was transferred to the Eastern District of North Carolina for trial on federal charges. *Id.* He argued for dismissal under Article IV of the IAD, which provides that a party State obtaining temporary custody of a prisoner for trial from another party State must try the prisoner on the pending charges before returning him to the sending State. IADA, § 2, art. IV(e). The contention was that because the United States is one "State" under the IADA, the transfer of the prisoner to federal authorities in one district required that the prisoner be tried on all outstanding federal charges, pending in any federal district, before the prisoner was returned to the Maryland prison. *Bryant,* 612 F.2d at 809. The Fourth Circuit rejected the argument, holding that though the prisoner's transfer to the Western District of North Carolina required that he be tried on the charges outstanding in that district before being returned to state custody, the transfer did not trigger any obligation on the part of prosecuting authorities in other federal districts. *Id.* at 810. The court stated: "[W]hen, as here, a federal district court obtains a state * prisoner for trial under circumstances invoking the [IADA], only that district is deemed a 'State' within contemplation of the Act." *Id.* Appellant argues this language applies here. Though appellant is correct that *Bryant* deems each federal district to be a "State," he brushes aside *Bryant's* explicit limitation

of its construction of the term "State" to cases involving the transfer of a state prisoner for trial on federal charges. *Id.* at 810 n. 6. In a footnote appended to the above quoted language, the court distinguished the case of a transfer of a *federal* prisoner for trial on federal charges: "This does not speak to the situation in which a federal prisoner is procured by writ for federal trial in another district than that of his confinement.... [T]he [IADA] was simply not intended to apply at all to intrafederal system transfers...." *Id.* at 810 n. 6. Because appellant is a federal rather than a state prisoner, *Bryant* by its terms is inapposite and does not support the proposition that in the instant case the Southern District of Indiana and the Northern District of California should be deemed to constitute distinct "States" under the IADA.

We agree with the court's observation in *Bryant* that Congress did not intend the IADA to apply to the transfer of a prisoner from one federal district to another. The legislative history of the IADA refers to the problem of federal prisoners subject to outstanding state charges and detainers, S.Rep. No. 1356, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad. News 4864, 4866, and also mentions the problem of state prisoners subject to outstanding federal charges and charges in the District of Columbia, *id.* at 4866–67, but does not suggest that Congress in enacting the IADA was concerned with federal prisoners facing outstanding federal charges. As the Sixth Circuit has noted, that the IADA is not implicated by prisoner transfers within the federal system "simply stat[es] the obvious, which is that in entering into the [IAD], the United States had not agreed with itself." *United States v. Woods,* 621 F.2d 844, 845 n. 1 (6th Cir.), *cert. denied,* 449 U.S. 877, 101 S.Ct. 222, 66 L.Ed.2d 99 (1980). We conclude, in harmony with the statutory language, the legislative history, and the pertinent case authority, including *Bryant,* that the IADA does not apply to detainers filed by federal authorities against federal prisoners.

Appellant next argues that the government's delay of more than eight months from his demand for trial on October 3, 1984 to his arraignment on June 18, 1985 was in violation of section 3161(j)(3) of the Speedy Trial Act, 18 U.S.C. § 3161(j)(3). Under section 3161(j)(3), once the government lodges a detainer against a prisoner and the prisoner responds and demands trial, the government must "promptly seek to obtain the presence of the prisoner for trial." *Id.* We need not determine whether the government violated section 3161(j)(3), because we reject the contention that dismissal of the indictment is an appropriate remedy for violation of section 3161(j)(3).

Our recent decision in *United States v. Valentine*, 783 F.2d 1413 (9th Cir.1986), is controlling. We held that dismissal of the indictment is not a remedy for violation of section 3161(j)(1) of the Speedy Trial Act. *Id.* at 1415–16. Section 3161(j)(1) provides that if the government knows that a person charged with a crime is serving a term of imprisonment, the government must promptly either lodge a detainer or otherwise seek to obtain the prisoner's presence for trial. 18 U.S.C. § 3161(j)(1). We observed in *Valentine* that though the sanctions provision of the Speedy Trial Act, 18 U.S.C. § 3162, provides for the sanction of dismissal of the indictment for certain specified substantive violations of the Act, it does not provide for the sanction of dismissal for violation of section 3161(j). *Valentine*, 783 F.2d at 1416. We also observed that unlike some of the other substantive sections of the Speedy Trial Act, section 3161(j)(1) does not by its terms provide a remedy for its violation. *Id.* We rejected in *Valentine* the contention that section 3161(j)(1) would be unenforceable without a dismissal remedy, as the Act makes available a number of disciplinary sanctions against the government attorney for violation of any of the Act's substantive provi-

sions. *Id.* We concluded from the terms of the statute that Congress did not intend the sanction of dismissal of the indictment to be imposed for violation of section 3161(j)(1). *Id.*

Though the holding in *Valentine* is limited to section 3161(j)(1), its reasoning applies with equal force to section 3161(j)(3). We see no reason to draw a distinction between the remedy for violation of section 3161(j)(1) and the remedy for violation of section 3161(j)(3), and nothing in the statute suggests such a distinction. We follow *Valentine* and hold that dismissal of the indictment is not a remedy for violation of section 3161(j)(3). Even assuming appellant has established a violation of section 3161(j)(3), he is not entitled under the Speedy Trial Act to have the indictment dismissed.[1]

Appellant also alleges violation of section 3161(b) of the Speedy Trial Act, which provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Under the statute, the remedy for violation of section 3161(b) is dismissal of the indictment. 18 U.S.C. § 3162(a). Appellant concedes he was neither arrested nor served with a summons. He asserts the government's lodging a detainer against him on October 3, 1984 should be construed as an "arrest" within the meaning of section 3161(b). Appellant's contention is that once the government lodges a detainer, it is obligated under the Speedy Trial Act to indict and try the prisoner within the strict time limits set out by section 3161(b) (thirty days between arrest and indictment) and section 3161(c) (seventy days between indictment and trial). As he was not indicted until May 7, 1985, appellant argues section 3161(b) was

---

**1.** Though the record is not entirely clear, it appears that appellant also relied on Rule 48(b) of the Federal Rules of Criminal Procedure as an independent ground for dismissal of the indictment. Appellant alleged neither prejudice from nor improper reasons for the government's delay; the district court did not err to the extent it refused to consider dismissal under Rule 48(b).

violated. Appellant's contention is meritless.

■ Section 3161(j) of the Speedy Trial Act provides the statutory speedy trial rights of incarcerated defendants. 18 U.S.C. § 3161(j). As we noted above, section 3161(j)(3) states that once the government lodges a detainer and the prisoner demands trial, the government's obligation is to act "promptly" to obtain the prisoner's presence for trial. 18 U.S.C. § 3161(j)(3). Section 3161(j)(3) does not require the government to act within specific time limits. The legislative history of the Speedy Trial Act makes clear that in the case of an incarcerated defendant, Congress intended the time limits of the Act to begin when the prisoner's presence is obtained for trial. H.R.Rep. No. 1508, 93d Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad.News 7401, 7416, 7429. Appellant's contention, that the mere filing of a detainer triggers the time limits during which the government must indict and try the prisoner, would render superfluous the government's duty to act "promptly" under section 3161(j)(3) and is inconsistent with Congress' intent that the time limits are to take effect only when the government has obtained the prisoner's presence for trial. The government's obligation under section 3161(b) was to indict appellant not later than thirty days after obtaining his presence in the Northern District of California. As appellant was indicted before he was transferred to the Northern District of California, section 3161(b) was not violated.

The judgment of the district court is AFFIRMED.