**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles DAWN, also known as Charles Cole, also known as Charles Webb, Defendant–Appellant.**

**No. 89–2328.**

United States Court of Appeals,
Seventh Circuit.

Argued March 1, 1990.

Decided April 26, 1990.

Rehearing Denied June 25, 1990.

state Agreement on Detainers had been violated. The trial court denied his motion, and he was subsequently convicted and sentenced to 54 months of incarceration. Dawn appeals the denial of his pre-trial motion as well as the sufficiency of the evidence to support his conviction. We affirm.

## I.

Defendant Charles Dawn was being held on felony charges in the Columbia County Jail in Wisconsin in September of 1982 when he seized an opportunity and escaped. Soon thereafter he was indicted on escape charges and an arrest warrant was issued. Law enforcement authorities were unable to apprehend him and he successfully led the life of a fugitive from justice. Freedom, however, proved to be an elusive commodity for Dawn as he was arrested in Salt Lake City, Utah some five years later on charges of aggravated robbery. As there was an outstanding warrant for his arrest on the escape charge, the United States Marshal for the District of Utah filed a detainer with the Salt Lake City authorities. The detainer served as formal notice of the pendency of federal charges for escape against Dawn and requested notice of release from custody so that federal authorities could assume custody if necessary. After learning of the detainer and the charges against him pending in the Western District of Wisconsin, Dawn telephoned the United States Attorney's Office to learn more about the charges. He spoke to Assistant United States Attorney Grant Johnson who complied with his request for information.

Grant C. Johnson, Asst. U.S. Atty., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Samuel J. Cahnman, Chicago, Ill., Paul W. Schwarzenbart, Lee, Johnson, Kilkelly & Nichol, Madison, Wis., for defendant-appellant.

Before CUDAHY, FLAUM, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

While awaiting trial on state charges in a Utah jail, Charles Dawn was notified by detainer that charges were pending against him in Wisconsin for escaping from federal custody several years earlier, in violation of 18 U.S.C. § 751. Prior to trial in Wisconsin, he filed a motion to dismiss the indictment on the grounds that his rights under the Speedy Trial Act and the Inter-

Dawn was subsequently convicted on the state charges in Utah and sentenced to confinement in the Utah State Prison. On July 18, 1988, he telephoned Johnson and advised him that he had been sentenced on the Utah charges and requested that he be brought to trial on the charges pending in Wisconsin. Dawn also asked Johnson whether there was anything else that he needed to do to invoke his speedy trial rights; Johnson mistakenly informed him that he had done all that was required.

Relying on this advice, Dawn made no further actions or demands for a speedy trial until September 30, 1988, when he was presented with a detainer issued by the United States Marshal in Utah which had a formal speedy trial notification attached. Dawn immediately executed the speedy trial demand form.

Johnson applied for and received a writ of habeas corpus *ad prosequendum* which required the defendant's presence before the United States District Court for the Western District of Wisconsin to answer for the escape charges. Dawn was taken into the custody of the United States Marshal's Service in Utah and returned to Wisconsin. Ironically, after keeping the authorities at bay for five years while he remained a fugitive, Dawn filed a pre-trial motion to dismiss the indictment on the grounds that the government did not act quickly enough in bringing him to trial on the escape charges. Specifically, he claimed that his rights under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, ("the Act"), and the Interstate Agreement on Detainers Act, 18 U.S.C.App. III, § 2 (the "Agreement"), had been violated. An evidentiary hearing was held before the trial court and a United States Magistrate subsequently recommended that the defendant's motion be dismissed. The trial court adopted the magistrate's findings and recommendations and held that, with regard to the Speedy Trial Act claim, Dawn's demand by telephone to Assistant United States Attorney Johnson for a speedy trial was sufficient to invoke § 3161(j) of the Speedy Trial Act, which requires the government, once it knows a person charged with an offense is serving a term of imprisonment in a penal institution, to "promptly" act to have that person brought back to the jurisdiction for trial. The trial court found, however, that it need not determine whether in fact the government had acted promptly in this case because the relief sought by the defendant, dismissal of the indictment, was not available for violations of § 3161(j). The trial court also found that Dawn's claim under the Agreement failed because his telephone call to Johnson in which he invoked his speedy trial rights failed to satisfy the technical requirements of the Agreement, including the condition that the demand be in writing and that it be transferred through a custodial official of the facility. The trial court noted that even if the request by phone was sufficient to invoke Dawn's rights under the Agreement, his claim failed because his motion to dismiss served to toll the 180-day detainer period, and excluding the time spent on the motion, only 164 days had passed.

Dawn was then tried and convicted on the escape charge. The court entered judgment on the jury's verdict and sentenced him to a term of 54 months incarceration to run concurrently to a term imposed in an earlier state prosecution. The trial court also determined that the sentence should run consecutively to the sentence that the defendant was presently serving in Utah. Dawn appeals the denial of his motion to dismiss the indictment claiming that the government's delay in bringing him to trial on the escape charge violated his rights under both the Act and the Agreement. He also claims that the government failed to prove an element of the offense of escape under 18 U.S.C. § 751—that the defendant was confined "by direction of the Attorney General."

## II.

We begin with Dawn's claim that his rights were violated under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Dawn's sole contention is that the district court erred in holding that dismissal of the indictment is not an available remedy for violation of § 3161(j) of the Act.

The Act was a legislative response to a perceived failure in the court system to adequately insure that " '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ...' " *United States v. Montoya*, 827 F.2d 143, 147 (7th Cir.1987) (quoting U.S. Const. amend VI). Under the Act, the government must, with certain enumerated exceptions, bring criminal defendants to trial within 100 days of their arrest and must indict a defendant within 30 days of his or

her arrest. 18 U.S.C. § 3161(b). Section 3161(j) addresses the procedures to be followed for bringing about the trial of an offender who is already in custody under sentence for a different offense. Section 3161(j) places a duty on the government to act "promptly" upon learning of the defendant's incarceration to either (1) undertake to obtain the offender's presence for trial or (2) have a detainer filed with the defendant's custodian and have the defendant informed of the charge and his right to demand a speedy trial.[1] Once the government receives notice that the prisoner demands a trial, the attorney for the government must promptly obtain the presence of the prisoner for trial.

■ A district court's interpretation of the Act calls for a *de novo* review by an appellate court. *Montoya*, 827 F.2d at 147; *United States v. Robinson*, 887 F.2d 651, 656 (6th Cir.1989). The trial court found that Dawn raised a "serious question" as to whether the government acted "promptly" in this case since the defendant invoked his speedy trial rights on July 18, 1988, and the government took no action until October 31, 1988, when it applied for a Writ of Habeas Corpus *ad Prosequendum.* The court concluded, however, that it was unnecessary to decide whether the government complied with the requirements of § 3161(j) because the remedy sought by the defendant, dismissal of the indictment, was not available for violations of § 3161(j).

■ We find that this conclusion is well supported by the plain language of the Speedy Trial Act. Neither § 3161(j) itself nor any other statutory provision provide such a sanction for its violation. Section 3162 provides the sanctions for Speedy Trial Act violations, and it addresses the dismissal sanction only in the event of violation of § 3161(b) or § 3161(c)(1). In contrast, § 3162 does *not* provide for dismissal in the event of violation of § 3161(j). "The language of § 3162(a) contains no ambiguities that might allow its sanctions to be imposed for a violation of § 3161(j)." *United States v. Valentine*, 783 F.2d 1413, 1415 (9th Cir.1986). Such an interpretation of the statute does not render § 3161 unenforceable, as the defendant suggests. Under subsections 3162(b)(4)(C)–(E), a violation of § 3161(j) may subject the government's attorney to fines, suspension or the filing of a report with a disciplinary committee. *See United States v. Anderton*, 752 F.2d 1005, 1008 (5th Cir.1985). In reaching the conclusion that "dismissal of the indictment is not a remedy for violations of § 3161(j)(1) of the Speedy Trial Act," a panel for the Ninth Circuit reasoned that "though the sanctions provision of the Speedy Trial Act, Title 18 United States Code, Section 3162, provides for the sanction of dismissal of the indictment for certain specified substantive violations of the Act, it does not provide for the sanction of dismissal for a violation of 3161(j)." *United States v. Stoner*, 799 F.2d 1253, 1257 (9th Cir.), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 729 (1986). Every court to address the issue has agreed that dismissal of the indictment is not an available remedy for violations of § 3161(j). *See Valentine*, 783 F.2d at

---

1. Section 3161(j) provides in full:

(j)(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial; or

cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner of his right to demand trial.

(2) If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the government who caused the detainer to be filed.

(3) Upon receipt of such notice the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.

(4) When the person having custody of the prisoner receives from the attorney for the Government a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that attorney for the Government (subject, in cases of interjurisdictional transfer, to any right of the prisoner to contest the legality of his delivery).

1415–1416; *Stoner*, 799 F.2d at 1257; *Anderton*, 752 F.2d at 1008; *United States v. Iwuamadi*, 716 F.Supp. 420 (D.Neb.1989). The defendant offers no support for departing from these precedents. Accordingly, we affirm the holding of the district court.

### III.

The defendant's other statutory challenge requires us to consider the government's compliance with Article III of the Interstate Agreement on Detainers. 18 U.S.C.App. III, § 2, Article III. The Agreement provides an interstate mechanism by which a prisoner in a signatory jurisdiction may secure trial on all charges for which detainers have been lodged against him by other signatory jurisdictions. Art. II(a). The Agreement is triggered when the government files a detainer against a prisoner to inform the institution in which he is incarcerated that he is wanted for trial on charges pending in another jurisdiction. Article III provides speedy trial rights for defendant's who are "serving a term of imprisonment", Art. IV(a), in a member jurisdiction and who have detainers lodged against them based on charges pending in another member jurisdiction. Under Article III, such defendants "shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction *written notice* of the place of imprisonment and his request for a final disposition to be made of the indictment, ..." 18 U.S.C., App. III, § 2, Art. III (emphasis added). The sanction for failure to bring the defendant to trial within the 180 day period is dismissal of the indictment with prejudice. 18 U.S.C., App. III, § 2, Art. V(c).

Dawn claims that his rights under Article III were violated because the government failed to bring him to trial on the escape charge within the prescribed 180 day period. He asserts that his demand by phone to the Assistant United States Attorney on July 18, 1988, was in substantial compliance with the "written notice" requirement of Article III and thus served to activate the 180 day clock. The district court, in its adopted findings, denied the defendant's motion on two grounds. The court first found that Dawn's oral demand to the Assistant United States Attorney failed to meet the specific requirement of the Article that the demand be made in writing and be delivered to the appropriate prosecuting authorities. The court further found that even if his request by phone satisfied the written notice requirement, the motion to dismiss would still fail because the 180 day period had not yet expired as the filing of the motion to dismiss tolled the 180 day period, which had only run 164 days at the time the motion was filed.

We agree with the district court's determination that the applicable 180 day period had not expired when the defendant filed his motion to dismiss because it was tolled during the pendency of his motion to dismiss. (Accordingly, we need not reach the issue of whether the defendant's telephonic demand satisfied the requirements of the Agreement). Article VI(a) of the Agreement contains the following provision concerning the tolling of time periods: "In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of said time periods shall be tolled whenever and for as long *as a prisoner is unable to stand trial* as determined by the court having jurisdiction of the matter." 18 U.S.C.App. III, § 2, Article VI(a) (emphasis added). We have defined the underscored language to include "all those periods of delay occasioned by the defendant," and specifically, "the periods of delay occasioned by the ... motions filed on behalf of the defendant ..." *United States v. Nesbitt*, 852 F.2d 1502 (7th Cir.1988); *United States v. Roy*, 830 F.2d 628, 634 (7th Cir. 1987). *See also United States v. Taylor*, 861 F.2d 316, 321 (1st Cir.1988); *United States v. Scheer*, 729 F.2d 164, 168 (2d Cir.1984); *United States v. Roy*, 771 F.2d 54, 59 (2d Cir.1985); *Bush v. Muncy*, 659 F.2d 402, 408–09 n. 4 (4th Cir.1981). Dawn alleges that his rights under the Agreement were activated by his telephone call to the Assistant United States Attorney on July 18, 1988. He filed his pre-trial motion

to dismiss on December 30, 1988. At that time, only 164 days had passed, and 16 days remained after the final determination of the motion for trial to commence. Accordingly, we affirm the district court's finding that the defendant's motion to dismiss for failure to comply with the time restrictions of Article III was premature.

## IV.

■ Dawn raises several claims challenging his conviction for escaping from the Columbia County Jail in violation of 18 U.S.C. § 751. We find each of his claims to be without merit, and only one warrants discussion here—his claim that the government failed to prove beyond a reasonable doubt an element of the charged offense of escape under 18 U.S.C. § 751. Dawn was charged in the indictment with "unlawful[ ] escape from a facility, to wit: the Columbia County Jail in which he was confined by the direction of the Attorney General pursuant to an arrest for a felony; all in violation of Title 18, United States Code, Section 751." Section 751(a), in relevant part, applies to a prisoner who "escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by the direction of the Attorney General ..." Section 751, therefore, covers two situations—escape from the custody of the Attorney General himself (or his representative), and escape from a facility in which a prisoner is incarcerated by the direction of the Attorney General. Dawn was indicted under the latter and contends that the government offered evidence to prove only the former; the government proved that he was in the *custody* of the Attorney General at the Columbia County Jail and not that he was being held there at the direction of the Attorney General. He argues, with some lack of clarity, that this failure in proof is fatal as confinement and custody are not synonymous because when a defendant is confined by the direction of the Attorney General, he is not in the custody of the Attorney General but rather in the custody of the local jailer.

The defendant faces a heavy burden on appeal in overturning a conviction on the sufficiency of the evidence. Our inquiry is whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ocampo*, 890 F.2d 1363 (7th Cir.1989). We can "reverse a jury's verdict of conviction only if the defendant can establish that the 'record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Rollins*, 862 F.2d 1282, 1287 (7th Cir.1988) (quoting *United States v. Goudy*, 792 F.2d 664, 674 (7th Cir.1986)). Our review of the record reveals that the defendant has failed to carry his burden. Counsel for both parties at oral argument were unable to successfully clarify the terms of Dawn's confinement when he was being held at the Columbia County Jail. At trial, the government offered sufficient evidence that the defendant was being held for the U.S. Marshals, including the testimony of William Manthey, the Deputy Sheriff of Columbia County. Manthey identified the booking sheet for the Columbia County Jail for the prisoner Charles Dawn and testified that the document stated with regard to Dawn's status prior to his escape, "Federal Prisoner. Hold for United States Marshals." The government's evidence, coupled with the court's proper instruction to the jury that any actions taken by the Marshals are necessarily by the direction of the Attorney General, was sufficient, in light of the high hurdle of review, for a reasonable jury to find that at the time of his escape he was being held at the jail for the United States Marshals by the direction of the Attorney General.

## V.

Accordingly, the defendant's challenges on appeal are without merit and his conviction is AFFIRMED.