**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Edwin WALLING,
Defendant–Appellant.**

**No. 91–2189.**

United States Court of Appeals,
Tenth Circuit.

Aug. 31, 1992.

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

Don J. Svet, U.S. Atty., and Stephen R. Kotz, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff-appellee.

Before BRORBY and EBEL, Circuit Judges, and VAN SICKLE, Senior District Judge.*

EBEL, Circuit Judge.

James Edwin Walling appeals his conviction for manufacturing counterfeit currency and aiding and abetting in violation of 18 U.S.C. §§ 471 & 2. Walling raises five issues: (1) whether the district court should have dismissed his indictment because of a violation of the Interstate Agreement on Detainers Act; (2) whether the court violated Walling's right to a fair and impartial jury by selecting juries for six different trials at the same time; (3) whether the court erred in taking into account Walling's conviction for "Driving While Ability Impaired" in calculating his criminal history for sentencing purposes;

* The Honorable Bruce M. Van Sickle, Senior Judge of the United States District Court for the District of North Dakota, sitting by designation.

(4) whether the court erred in finding that Walling was a leader or organizer for sentencing purposes under the Sentencing Guidelines; and (5) whether the court should have reduced his offense level by two points for acceptance of responsibility under the Sentencing Guidelines. We answer all these questions in the negative. Accordingly, we affirm Walling's conviction and sentence.

## BACKGROUND

Walling and his codefendant, John Jackson, agreed to manufacture counterfeit currency. Walling provided a camera and a metal plate for the operation. Jackson obtained a printing press. Walling, who had previous counterfeiting experience, instructed Jackson on various strategies to employ during the course of the enterprise.

Walling and Jackson were arrested and charged with counterfeiting. Although the government recovered some $47,000 in counterfeit currency, it failed to recover the metal plates used for printing. Jackson agreed to testify against Walling in exchange for the government's promise to recommend a downward departure in Jackson's sentence.

Prior to trial in the United States District Court for the District of New Mexico, Walling filed a motion to dismiss on the grounds that the government had failed to bring him to trial within the 180–day period mandated by the Interstate Agreement on Detainers Act. At that time, Walling was serving a sentence for a related crime in a federal prison in Colorado. The district court denied the motion.

At trial, the district court conducted jury selection for six cases simultaneously, the other five of which had no relation to Walling's. Walling unsuccessfully objected to the manner of his jury selection. At the end of trial, the jury returned a guilty verdict.

At the subsequent sentencing hearing, Walling filed his objections to the Presentence Report. Walling objected to the report's conclusion that he had been the leader or organizer of the counterfeiting operation. In fact, he argued, Jackson had played just as large a role as Walling. The district court rejected Walling's argument and imposed a two-point increase in his offense level pursuant to U.S.S.G. § 3B1.1(c). The court also refused to reduce Walling's offense level by two points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In addition, Walling unsuccessfully objected to the Presentence Report's use of a Colorado conviction for Driving While Ability Impaired in determining his criminal history category. The court adopted the findings and guideline recommendation contained in the Presentence Report and sentenced Walling to a 30–month term of imprisonment. This appeal followed.

## I. IADA Violation

Walling argues first that the government's failure to bring him to trial on federal charges in New Mexico within 180 days of his request to do so violated his rights under the Interstate Agreement on Detainers Act ("IADA"). At the time of his request, Walling was imprisoned at a federal correctional facility in Colorado for a conviction in the United States District Court for the District of Colorado.

The IADA does not apply in such a situation. The IADA is an agreement between the governments of member states. The federal government also subscribes to the IADA and, for purposes of it, is considered a single state. The IADA applies to transfers between states, not transfers within a state. Hence, the IADA has no application if a prisoner in federal custody in one federal judicial district faces another federal indictment in a different federal judicial district. *See United States v. Stoner*, 799 F.2d 1253, 1255–56 (9th Cir.), *cert. denied*, 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 729 (1986); *United States v. Woods*, 621 F.2d 844, 845 n. 1 (6th Cir.), *cert. denied*, 449 U.S. 877, 101 S.Ct. 222, 66 L.Ed.2d 99 (1980); *United States v. Krohn*, 558 F.2d 390, 392 (8th Cir.), *cert. denied*, 434 U.S. 868, 98 S.Ct. 207, 54 L.Ed.2d 145 (1977). We therefore reject Walling's argument that a violation of the IADA occurred.

## II. Jury Selection

■ Walling argues that the selection of juries for six cases at the same time prejudiced his right to a fair and impartial jury. In *United States v. Franklin*, 700 F.2d 1241, 1242 (10th Cir.1983), we held that a district court may use this method of jury selection within its discretion. Walling asserts that the selection process confused the jury by exposing them to unrelated cases involving more serious criminal charges. Although there may be situations in which such a procedure might prejudice a defendant, we find no such situation here. Accordingly, we find no abuse of discretion.

## III. DWAI Conviction

■ Walling argues that the district court should not have considered his Colorado conviction for Driving While Ability Impaired ("DWAI") when determining his criminal history category. Walling contends that under Colorado law, DWAI is a less serious offense than Driving Under the Influence ("DUI"), and that it therefore should be excluded under U.S.S.G. § 4A1.2(c).

Application Note 5 to section 4A1.2 states, "Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)." States define terms such as "under the influence" in various ways. In a number of states, the term means simply that an individual's ability to drive a vehicle is impaired. *See, e.g., State v. Myers*, 88 N.M. 16, 536 P.2d 280, 283 (N.M.Ct.App.1975) ("The term 'under the influence' has been interpreted to mean 'that to the slightest degree defendant was less able, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle an automobile with safety to himself and the public.'") (citation omitted); *State v. Schmitt*, 150 Vt. 503, 554 A.2d 666, 669 (1988) (affirming jury instruction that defined under the influence as "when a person's full mental or physical faculties, his mental or physical ability, are diminished, impaired or affected in the slightest degree by intoxicating liquor"). Thus, the reference in Application Note 5 to "similar offenses" means offenses involving driving and alcohol impairment.

In Colorado, DWAI is an offense involving driving and alcohol impairment. Colorado law defines DWAI as

driving a vehicle when a person has consumed alcohol or one or more drugs, or a combination of both alcohol and one or more drugs, which ... affects him to the slightest degree so that he is less able than he ordinarily would have been, either mentally or physically, or both ..., to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle.

Colo.Rev.Stat. § 42–4–1202(1)(g) (Supp. 1991). If a person has a blood alcohol level of less than 0.05, the statute creates a presumption that "his ability to operate a vehicle [is] not impaired by the consumption of alcohol," *id.* § 42–4–1202(2)(a). However, if a person has a blood alcohol level between 0.05 and 0.10, the statute creates a presumption that the person's "ability to operate a vehicle [is] impaired by the consumption of alcohol." *Id.* § 42–4–1202(2)(b). These presumptions reflect the Colorado legislature's judgment that the ability of a person operating a motor vehicle with a blood alcohol level in the latter range is impaired. Thus, under note 5 to section 4A1.2 of the U.S. Sentencing Guidelines, DWAI is clearly a "similar offense[ ]" to "driving while intoxicated or under the influence." The existence of a more serious offense under Colorado law does not alter our analysis. Accordingly, we reject Walling's argument on this issue and hold that DWAI falls into the category of alcohol-related driving offenses addressed by Application Note 5. *Accord United States v. Deigert*, 916 F.2d 916, 918 (4th Cir.1990) (convictions for both "driving while impaired" and "driving under the influence of alcohol" properly included in criminal history calculation).

### IV. Sentencing Guideline Factual Findings

█ Walling asserts that the district court erred in finding (1) that he was a leader or organizer under U.S.S.G. § 3B1.1(c) and (2) that he had not sufficiently accepted responsibility under U.S.S.G. § 3E1.1. We review both these factual findings under the clearly erroneous standard. *See United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.) (§ 3B1.1), *cert. denied,* —— U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990); *United States v. Ochoa–Fabian,* 935 F.2d 1139, 1142 (10th Cir.1991) (§ 3E1.1), *cert. denied,* —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). After reviewing the record, we cannot say that these findings were clearly erroneous. We therefore reject Walling's challenge to his sentence.

### CONCLUSION

Finding no error below, we AFFIRM Walling's conviction and sentence.