UNITED STATES of America,

v.

Anthony Lee KING, Defendant.

No. 93CR40.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 12, 1995.

M. Hannah Lauck, Assistant U.S. Attorney, Eastern District of Virginia, Richmond, VA, for plaintiff.

Raymond A. Carpenter, Richmond, VA, for defendant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the defendant's motion to dismiss the indictment on the grounds that his Sixth Amendment right to a speedy trial has been violated. For the reasons stated below, the defendant's motion is denied. However, a violation of a provision of the Speedy Trial Act, 18 U.S.C. § 3161(j)(2), has occurred, and therefore the defendant's court-appointed attorney is awarded an additional $1000 over and above his requested compensation.

### I. Background

Anthony Lee King was indicted on April 6, 1993, on five (5) counts of possessing certain chemicals with reasonable cause to believe that they would be used in the manufacture of methamphetamine, a controlled substance, in violation of 21 U.S.C. § 841(d). That same day he was released from state custody after state charges relating to the same events had been dismissed. King left Virginia shortly thereafter to avoid arrest, according to the government, or coincidentally, according to King. His whereabouts were unknown until May 24, 1994, when he was arrested in Nevada on charges involving the unauthorized use of a credit card.

On May 26, 1994, while in the Clark County Detention Center in Las Vegas, Nevada, King was given a detainer informing him of the federal indictment pending against him in Virginia. That detainer, however, did not

have a Speedy Trial Act notification attached. Shortly thereafter, the Nevada state charges against King were dismissed when federal charges were brought. King was transferred to federal custody, whereupon he entered into plea negotiations. Under the proposed plea agreement, the federal charges against King pending in Virginia would be dismissed if he provided useful information to the authorities in Nevada. The plea agreement was never consummated, however, and King ultimately pled guilty to charges facing him in Nevada and was sentenced to eighteen (18) months imprisonment.

King served his sentence at the Federal Correctional Institute in Oakdale, Louisiana. Prior to his transfer there, on January 7, 1995, he filed an inmate request form asking that he be informed of any outstanding detainers pursuant to the Interstate Agreement on Detainers. He never received any response.

On April 6, 1995, United States Marshal Floyd Dugger learned of King's incarceration in Louisiana from Mary Singleton at FCI–Oakdale, and immediately faxed a detainer to the prison. That detainer had a Speedy Trial Act notification attached, with a typed-in instruction to King to select whether he requested a speedy trial or not. This detainer was never executed, however, because on April 7, 1995, the United States Marshals Office for the Western District of Louisiana, at Dugger's request, issued another detainer.[1] This detainer also had a Speedy Trial Act notification attached, but without the typed-in instruction. King executed the notification, but failed to indicate whether or not he requested a speedy trial. On July 21, 1995, King finished serving his time on the federal credit card charge, and was transferred to the Eastern District of Virginia to face the outstanding charges against him.

King filed this motion to dismiss, arguing that the above events violated his Sixth Amendment right to a speedy trial. The United States disagrees.

## II. Analyzing the Sixth Amendment Right to a Speedy Trial: The *Barker* Test

■ The Supreme Court set forth the test for determining whether a defendant's Sixth Amendment right to a speedy trial has been violated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The four factors to be considered are (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant has timely asserted his right to a speedy trial, and (4) whether the defendant has suffered prejudice as a result of the delay. *See id.* at 530–32, 92 S.Ct. at 2192–93. All four factors need not be present, however, to find a violation. *See id.* at 533, 92 S.Ct. at 2192. "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.*

### A. The Length of the Delay

■■ Length of delay, in addition to being the first factor in the *Barker* test, also represents an independent hurdle which must be overcome to prompt that test. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520, 528 (1992) (citation omitted). The Supreme Court noted that "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* n. 1. The delay between King's indictment and his trial on those charges is over 31 months, and thus is sufficient to trigger the *Barker* test.

■ The government correctly notes that in *Barker* itself, a delay of five years was held not to violate the accused's right to a speedy trial, and that the Fourth Circuit, in *Ricon v. Garrison,* 517 F.2d 628 (4th Cir.),

---

1. According to Dugger, the normal procedure is to have the U.S. Marshall's office in the district in which the prison is located issue the detainer. He testified that he took the unusual step of faxing the April 6 detainer to ensure that King did not get lost in the system again.

*cert. denied,* 423 U.S. 895, 96 S.Ct. 195, 46 L.Ed.2d 127 (1975), held that a delay of 36 months did not violate the Sixth Amendment. The government misapprehends, however, what "presumptively prejudicial" means. It does not mean that solely because of the length of the delay the defendant's Sixth Amendment rights have been violated. Rather, as noted above, it means that the length of the delay is sufficient to "trigger judicial examination of the claim." *Doggett,* 505 U.S. at 652, 112 S.Ct. at 2691, 120 L.Ed.2d at 528.

Once such an examination is triggered, the weight given in the *Barker* analysis to the length of the delay depends upon the extent to which the delay exceeds the bare minimum considered "presumptively prejudicial." *See id.* That analysis is performed below, after consideration of the remaining factors.

**B. The Reason for the Delay**

*1. April 6, 1993, to May 26, 1994*

■ King asserts that the delay is entirely the fault of the government. At the hearing on his motion to dismiss, King took the stand and said that when he was released from state custody in Virginia, he was unaware that federal charges were pending against him. He decided to move to California, and until his arrest in Nevada over a year later, never knew about the indictment. King further claimed that once in custody, he repeatedly attempted to discover whether any charges were pending against him anywhere, so that he could invoke his right to a speedy trial. He was thwarted in this attempt, he claims, because the first detainer he received did not have a Speedy Trial Act notification attached, thus leading him to believe that he did not have a right to a speedy trial on that charge, and because his request pursuant to the Interstate Agreement on Detainers was never answered.

United States Marshal Floyd Dugger told a somewhat different story at the hearing. Upon learning on April 6, 1993, that King had been released from state custody, Dugger immediately commenced an investigation into his whereabouts. In the course of this investigation, Dugger called King's sister in Dinwiddie County, Virginia. He did not identify himself to her as a U.S. Marshal, but asked to speak with King, who then came to the phone. According to Dugger, he then identified himself as a U.S. Marshal, and arranged an appointment with King at the United States Marshals Service office at 10:00 A.M. the following Monday. Upon the termination of the phone conversation, Dugger and another U.S. Marshal immediately left for Dinwiddie County to arrest King, but by the time they arrived there, King had already fled.

King disputes this account. He acknowledges speaking with Dugger when he was in Dinwiddie County, but claims that Dugger never identified himself as a U.S. Marshal. Rather, according to King, Dugger claimed to be a new inhabitant of King's former residence, who wanted to make arrangements for King to pick up some boxes remaining there.

This Court credits the testimony of U.S. Marshal Dugger. The key factor sustaining his credibility is that while he travelled to Dinwiddie County immediately after speaking with King on the telephone, King had already left by the time he got there. The chain of circumstances strongly suggest that King knew that Dugger was a U.S. Marshal, that he knew Dugger intended to apprehend him, and so fled from his sister's residence. Thus, the delay from April 6, 1993 to May 26, 1994, is chargeable to King.

*2. May 26, 1994, to April 7, 1995*

■ The same is not true, however, of the delay from May 26, 1994, to April 7, 1995. On May 26, 1994, King was given a detainer regarding the pending charges in Virginia. The detainer says explicitly on its face that "[t]he notice requirements of the Speedy Trial Act of 1974 (P.L. 93–619) apply if the Detainer is based on pending Federal criminal charges which have not yet been tried." It also provides a box to be checked if the Act applies, with specific instructions in that case to have the inmate execute a Speedy Trial Act notification form. On the May 26, 1994, detainer, the box was not checked and the form was not attached, despite the fact that detainer given to King was "based on

pending Federal criminal charges which have not yet been tried."

U.S. Marshal Dugger testified at the hearing that it is the regular practice of the United States Marshals Service not to attach such a notification when the individual in question is being held in a state facility on pending state charges of which he has not yet been convicted. This practice is apparently nationwide in scope, as Dugger testified that it was regular procedure, and this procedure was followed with regard to the May 26, 1994, detainer, which was issued by the U.S. Marshals Service office for the District of Nevada.

This practice is very misleading, because by reading the detainer and noting that the box was not checked, the prisoner might very well think that the detainer does not relate to pending Federal criminal charges, and almost certainly will think that he does not have a right to a speedy trial on whatever matter for which the detainer was issued. The government should not be in the business of blindsiding criminal defendants in this manner.

In addition to being misleading, the procedure described by Dugger is illegal. The United States Marshals Service no doubt fails to attach Speedy Trial Act notification forms to detainers issued regarding individuals in state custody who have not yet been convicted of state charges under the authority of 18 U.S.C. § 3161(j)(1)(B), which reads:

> If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

One charged with a state offense and imprisoned awaiting trial, but not yet convicted, is not "serving a term of imprisonment." Therefore, the government is not required to file a detainer at all. As no detainer is required, the U.S. Marshals Service has apparently decided that it is permissible to file a detainer, but without the notification that would normally be required under 18 U.S.C. § 3161(j)(1)(B). This procedure allows the

government to obtain all the advantages of issuing a detainer, the primary one being that the defendant will be held until the government is prepared to try him, without the cost of informing him of his right to be tried within a specific period of time. This practice thus violates the spirit of 18 U.S.C. § 3161(j)(1)(B).

It also violates the letter of 18 U.S.C. § 3161(j)(2). That statute reads:

> If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

The plain language of this statute provides that when a detainer is issued, a prisoner must be informed of his right to demand trial. The statute affords no exception for cases where the issuance of the detainer is optional; it does not even say "[i]f the person having custody of such prisoner receives such a detainer ..." which would limit the class of detainers affected to those required to be issued under 18 U.S.C. § 3161(j)(1)(B). "If the statutory language 'is plain and admits of no more than one meaning, the duty of interpretation does not arise.'" *Robinson v. Shell Oil Co.*, 70 F.3d 325, 328 (4th Cir.1995) (quoting *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir.1994) quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

■ Thus, when a defendant is held in state custody on pending state charges, the government need not issue a detainer, but if it chooses to do so, and gain the advantages thereof, it *must* attach a Speedy Trial Act notification form. That was not done in this case, and therefore King's rights under the Speedy Trial Act were violated. Consequently, the delay from May 26, 1994, to April 7, 1995, is chargeable to the government. Sanctions for this violation are discussed in III. below.

### 3. April 7, 1995, Onward

■ On April 7, 1995, King received a detainer from the United States Marshals Service office for the Western District of Louisiana. That detainer did have a Speedy Trial Act notification attached, because by that point King was serving a term of imprisonment. King executed the notification, but did not indicate whether or not he demanded a speedy trial.

King testified at the hearing that he thought his signature merely indicated that he had received the form, and that he believed that his speedy trial rights remained intact. He argued that the form is confusing, noting that U.S. Marshal Dugger regularly typed a special direction on such notifications which instructed the defendant to select whether or not he demanded a speedy trial.

These arguments lack merit. King is a well-educated, literate individual. The form is only one page, and not very complex. All that is required of the defendant is to circle "do" or "do not" regarding his desire for a speedy trial. King's failure to circle either option represents a waiver of his speedy trial rights. Therefore, the delay from April 7, 1995, onward is chargeable to King.

### C. Whether the Defendant Has Timely Asserted His Right to a Speedy Trial

■ King argues that he repeatedly asserted his right to a speedy trial, but was told that he had no such right. He cites the lack of any Speedy Trial Act notification attached to the May 26, 1994, detainer and his request pursuant to the Interstate Agreement on Detainers made on January 7, 1995, to which he received no response. These two events without question impeded King's ability to assert his right to a speedy trial. Yet when finally given an opportunity to assert his right to a speedy trial on the Speedy Trial Act notification form attached to the April 7, 1995, detainer, King failed to do so. Therefore, he did not timely assert his right to a speedy trial.

### D. Whether the Defendant Has Suffered Prejudice as a Result of the Delay

■ King argues that he has suffered prejudice as a result of the delay, in that witnesses have disappeared and the remnants of his laboratory have been destroyed, thus impeding his ability to show a legitimate purpose for his possession of the listed chemicals. The government does not contest that King has suffered such prejudice, but contends that they resulted from his flight from the law, and not the delay subsequent to his apprehension in Nevada. As most of King's laboratory was disposed of before his arrest in Nevada, the government's contention is correct, and King has not suffered any prejudice resulting from the government's inaction.

### E. The Barker Factors in Combination

■ King failed to assert his right to a speedy trial when given the opportunity. He fled Virginia when he learned that a U.S. Marshal sought to speak with him. He suffered no prejudice from the only part of the delay which was the government's fault, the period from May 26, 1994 to April 7, 1995. The only factor in his favor is that 31 months have elapsed between indictment and trial. Standing alone, that delay does not constitute a violation of King's Sixth Amendment rights under the *Barker* test.

· While the Supreme Court held in *Doggett* that actual prejudice need not be shown under certain circumstances, see *Doggett*, 505 U.S. at 657, 112 S.Ct. at 2694, 120 L.Ed.2d at 532 (if government sufficiently negligent, actual prejudice need not be shown for Sixth Amendment speedy trial right violation), that case does not apply to the instant facts. Here, only a ten and a half month delay resulted from the government's negligence, as opposed to the six year delay chargeable to the government in *Doggett. See id.* Furthermore, the defendant in *Doggett* timely asserted his speedy trial rights after arrest, as he was unaware of the pending indictment prior to that time. *See id.,* 505 U.S. at 653, 112 S.Ct. at 2691, 120 L.Ed.2d at 529. In contrast, King fled from authorities he knew to be searching for him. Thus, the exception to the actual prejudice prong established in

certain circumstances by *Doggett* does not apply. Therefore, King has not shown a violation of his Sixth Amendment right to a speedy trial, and his motion to dismiss the indictment is denied.

### III. Sanctions for the Violation of the Speedy Trial Act

■ As noted in II.B.2. above, King's rights under the Speedy Trial Act, 18 U.S.C. § 3161(j)(2), have been violated. Sanctions against the government are therefore appropriate. Dismissal, however, is not an available sanction for a violation of 18 U.S.C. § 3161(j)(2).

> Every court to have considered the subject has held that dismissal of the charges against a defendant is not an appropriate remedy for a violation of § 3161(j). *See United States v. Dawn*, 900 F.2d 1132, 1135–36 (7th Cir.) (and cases cited therein), *cert. denied*, 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990). These courts have noted that 18 U.S.C. § 3162 (1988), which provides sanctions for violations of § 3161, provides for dismissal of the charges against a defendant only in the case of a violation of § 3161(b) or § 3161(c). Nothing in § 3162 provides for dismissal where the government has violated § 3161(j). Therefore, the courts have reasoned, dismissal is not warranted where the government has violated § 3161(j).

*United States v. Saffeels*, 982 F.2d 1199, 1204–05 (8th Cir.1992), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993); *see also United States v. Lockwood*, 1994 WL 399176, at *1 (4th Cir. Aug. 3, 1994) ("[T]he remedy of dismissal of the indictment ... is not available" for violations of 18 U.S.C. § 3161(j)); 18 U.S.C. § 3162(a).

■ Other sanctions are available, however, for a violation of 18 U.S.C. § 3161(j)(2). "Under subsections 3162(b)(4)(C)–(E), a violation of § 3161(j) may subject the government's attorney to fines, suspension or the filing of a report with a disciplinary committee." *Dawn*, 900 F.2d at 1135; *see also Lockwood* 1994 WL 399176, at *1 (same); 18 U.S.C. § 3162(b)(4). A sanction against the government attorney, however, is not appropriate in this case. The violation of King's rights under the Speedy Trial Act was the fault of the United States Marshals Service, in failing to attach the Speedy Trial Act notification form to the May 26, 1994, detainer, not the fault of the United States Attorneys Office for the Eastern District of Virginia.

Title 18, Section 3162(b) further provides, however, that "[t]he authority to punish provided for by this subsection shall be in addition to any other authority or power available to such court." King's rights were violated, and a sanction against the government is proper. King's attorney, who is court-appointed and thus paid by the government, would have committed malpractice, as well as given live birth to a 28 U.S.C. § 2255 motion, if he had failed to raise this issue before the Court. Therefore, King's attorney is awarded an additional $1000 over and above his fee submission, to compensate him for the time spent preparing and arguing the motion to dismiss.

### IV. Conclusion

For the foregoing reasons, the defendant's motion to dismiss the indictment on the grounds that his Sixth Amendment right to a speedy trial has been violated is denied. However, a violation of a provision of the Speedy Trial Act, 18 U.S.C. § 3161(j)(2), has occurred, and therefore the defendant's court-appointed attorney is awarded an additional $1000 over and above his requested compensation.